THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

MARY ANN SCHMISSEUR.

*Filed at Mt. Vernon November 5, 1890.*

1. CONTRACT—LEASE—*sale of underlying coal—and lease of surface
ground—limitation as to time for removal of the coal.* The owner of a
tract of land sold the coal under the same for a stipulated sum, reserv-
ing no royalty, and to enable the purchaser to mine and raise the coal
leased to him a certain portion of the surface of the land for a term of
years, unless the coal should be sooner exhausted, in which event said
lease and the right to mine said coal should cease and expire: *Held,*
that the grantee of the coal, and his assigns, had the whole term pre-
scribed in the lease in which to remove the coal underlying the lessor's
lands, without limitation or restriction.

2. Where the owner of coal land, for a sum in gross, sells all his
right to the coal underlying the land, and grants a fixed time within
which the coal may be removed, the purchaser of the coal or his assigns,
by failing to remove the same as soon as he might, and availing him-
self of the time limited to him, is guilty of no fraud upon the rights of
his vendor.

3. INJUNCTION—*to restrain a violation of contract—as, in respect to the
use of leased premises.* Where a contract of leasing is certain, and the
use of the demised premises for a specified purpose is clearly fixed by
the agreement of parties, the appropriation of the premises to a use in-
consistent with that for which they are demised will frequently afford
ground for the interposition of a court of equity, by way of injunction.
When the use to which the premises are sought to be appropriated is
inconsistent with the purposes for which they were let, and the change
will operate to the injury of the lessor, the aid of such court may prop-
erly be invoked.

4. Courts of equity will frequently interpose by injunction, and in-
directly enforce specific performance of purely negative covenants
annexed to or contained in contracts or leases, by prohibiting their

breach, and will entertain bills for injunction to prevent their breach, although a violation of the covenants will occasion no substantial injury, or though the damages, if any, be recoverable at law.

5. But where the parties have not fixed, in their agreement, by express covenant, what shall not be done, equity proceeds only to prevent irreparable injury. If the party does not see fit to expressly stipulate against the act in his contract, a court of equity will not, by implication, insert it, and then enforce it, unless substantial injury is thereby to be prevented.

6. So where a land owner sold the coal underlying the land, and leased a portion of the surface to the purchaser for a fixed term of years, in which to sink pits or shafts to successfully mine and remove the coal, the lease or contract containing no covenant or condition not to appropriate the leased premises to any other use or purpose, it was *held,* that a court of equity would not enjoin the lessee or his assigns from using the shafts, etc., on the demised premises, for raising coal mined on adjacent lands, no injury being shown as likely to result from such other use.

APPEAL from the Appellate Court for the Fourth District ;— heard in that court on appeal from the Circuit Court of St. Clair county ; the Hon. WILLIAM H. SNYDER, Judge, presiding.

The following statement of facts taken from the opinion of the Appellate Court is sufficiently full to present facts not otherwise appearing :

"This is a bill for injunction, filed by Mary Ann Schmisseur, against the Consolidated Coal Company, to enjoin it from transporting across or through land of complainant, or through the pit or shaft sunk on complainant's land, any coal mined on lands other than complainant's.

"It appears from the record, that on the 13th day of March, 1873, the complainant was and still is the owner of certain lands in St. Clair county, and on the 13th of March, 1873, entered into a contract in writing, by which, in consideration of $22,281 paid and secured to be paid, by notes and mortgage on the property leased, she absolutely sold and conveyed to the Schuremans all the coal underlying her farm in St. Clair county, which contained $159\frac{52}{100}$ acres, reserving certain speci-

fied coal from the lease. The contract contains this provision: 'And for the purpose of enabling said Schuremans to sink pits or shafts and successfully mine and remove said coal, said Schmisseur hereby leases unto them, and to their legal representatives, for the term of thirty-five years, (unless the said coal shall be sooner exhausted, in which event said lease and the right to mine said coal shall cease and expire,) certain portions of said farm, containing in all eleven acres.' The contract then describes the eleven acres.

"The bill further sets forth, the grantees and lessees went into possession, sunk a shaft, opened a mine, and mined coal until 1886, when they sold to appellant their interest under the contract, since which time appellant has been in possession and operating the mine. It further appears that appellant acquired over 100 acres of coal lands from Ward and Krelich adjoining the lands of complainant, and through the entries and openings in complainant's land is removing the coal mined on the Ward and Krelich land, and hoisting the same through the shaft or pit on complainant's land, and is also removing coal mined from the Krelich land through complainant's land to a shaft on land adjoining complainant's, which pit is known as the 'Yoch mine.' It is further alleged in the bill, that thereby the term is fraudulently lengthened by the company, and it was fraudulently using the leased premises for a purpose not authorized by the lease, and the complainant sustained irreparable damages, and can not protect her rights at law without bringing a multiplicity of suits."

About one-half of the coal under the Schmisseur land has been taken out. The circuit court entered a decree, enjoining the use of the pit and entries except for hoisting and removing coal mined under complainant's land. Upon appeal to the Appellate Court this decree was affirmed, and the defendant below prosecutes this appeal.

Mr. Charles W. Thomas, for the appellant:

The complainant in this suit neither having nor being entitled to the possession of the property claimed to be damaged by defendant's acts, had no remedy in equity, unless it was shown that the defendant was either guilty of a fraud or collusion, or the acts complained of were destructive of complainant's estate.    High on Injunctions, sec. 458.

The allegations of fraud not being proved, for the reason there was none, the jurisdiction of the court fails.    Equity will not interfere when the damages would be only nominal. *Bassett* v. *Salisbury,* 47 N. H. 426; *Sargent* v. *George,* 56 Vt. 627.

As to multiplicity of suits as an equitable ground of jurisdiction, see High on Injunctions, sec. 459; *Jerome* v. *Ross,* 7 Johns. Ch. 315; *Goodell* v. *Lassen,* 69 Ill. 145.

It has frequently been held, that when a lease contains an express negative covenant, as was the case in *Steward* v. *Winters,* 4 Sandf. Ch. 587, a court of equity would restrain its violation by the lessee.    *Kemp* v. *Sober,* 1 Sim. (N. S.) 520; *Mayor* v. *Pattison,* 10 East, 136; *Brouwer* v. *Jones,* 23 Barb. 153; *Hodson* v. *Coppard,* 29 Beav. 4.

But the lease in this case contains no such covenant, and it falls directly under the rule laid down in *Petto* v. *Railway Co.* 32 L. J. Ch. 677, 11 W. R. 874, and 1 H. & M. 468, in which it was held, that where a contract contains an express negative covenant, and complete justice can be done between the parties, a court of equity will grant an injunction to restrain the breach of a negative covenant.    But the court rarely interferes where there is no distinct negative stipulation, but the negative obligation is inferred only from the positive contract.

Covenants are either of an affirmative or negative nature. Where a man covenants that something has been done or shall be done hereafter, the covenant is affirmative.    Where a man covenants that a thing has not been done or shall not be done hereafter, the covenant is a negative one.    In cases where the

covenant is affirmative, the remedy in equity is by way of specific performance. If it is a negative one, the remedy is by way of injunction. In restraining by injunction the breach of a negative covenant, the interference of the court is, in effect, an order for specific performance. Kerr on Injunctions, 503.

Mr. W. C. KUEFFNER, and Mr. GEORGE C. REBHAN, for the appellee:

The legal principles involved in this case are the same as those governing the case of *Seavers* v. *Cleary*, 75 Ill. 349. It is impossible to distinguish it in principle.

The lessor may restrain his lessee, or those claiming under him or acting by his authority, from converting the demised premises to such uses as are inconsistent with the terms of the lease, and as are likely to result in such injury to the owner's right as can not be adequately compensated by proceedings at law. High on Injunctions, (2d ed.) sec. 434; *Steward* v. *Winters*, 4 Sandf. Ch. 587; *Maddock* v. *White*, 4 Md. 72; *Douglas* v. *Wiggins*, 1 Johns. Ch. 435.

Whenever, under the terms of a lease, the lessee is restricted to the use of the demised premises in a particular manner or for a specified purpose, a violation of the covenant by the use of the premises in a different manner or for a different purpose, affords ground for the interposition of equity, by injunction. High on Injunctions, (2d ed.) sec. 436.

If the contract right is clearly established and the violation is apparent, the agreement being of such a nature as to be capable of specific enforcement, an injunction may be granted regardless of the inconvenience to defendants. Nor will it avail against the granting of the writ, that the act complained of will be productive of no injury to the complainant, and may even be beneficial to him, since it is for him to say whether the agreement should be preserved, or whether he shall permit it to be violated; and the fact of violation of the contract being established, the court may interfere, without requiring

proof of actual damages. High on Injunctions, sec. 1135; *Tipping* v. *Eckersley*, 2 K. & J. 264; *Storer* v. *Railroad Co.* 2 Y. & C. C. C. 48; *Dickinson* v. *Canal Co.* 15 Beav. 270; *Ingram* v. *Norcraft*, 33 id. 49; *Steward* v. *Winters*, 4 Sandf. Ch. 587.

As to multiplicity of suits as an equitable ground of jurisdiction, see High on Injunctions, sec. 1142; *Steward* v. *Winters*, 4 Sandf. Ch. 587; *Johnson* v. *Rochester*, 13 Hun, 285; 108 N. Y. 179; *Canal Co.* v. *Canal Co.* 31 id. 91; *Paper Co.* v. *Kelley*, 70 Wis. 287.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The principal question presented by this record is, whether a case is made by appellee that will give a court of equity jurisdiction to interfere, by injunction, to prevent appellant from using the entries, shaft and leased ground upon her land to transport and hoist coal taken from the adjoining lands owned by appellant. Four separate grounds of equitable jurisdiction are relied upon, viz: First, that the acts of appellant in driving entries through the coal on appellee's land to coal upon the adjoining tracts, and taking coal therefrom through such entries and out at such shaft, is a fraud upon appellee, in that it extends the lease and postpones the enjoyment of the reversion of the eleven acres of land included in the lease for a longer time than would occur if appellant mined all coal hoisted at the shaft, or sold at or shipped from said mines, from the coal underlying appellee's land; second, that such acts of appellant are in violation of the contract under which it holds, and in breach of its covenants, being a use of the land of appellee for a purpose other and different than that provided for in said contract; third, that said acts of appellant, if permitted, will result in irreparable injury; and fourth, that the interposition of equity is justified to prevent a multiplicity of suits.

In respect of the first ground urged, it must be said that there are no facts or circumstances alleged or proved which are sufficient to charge appellant with fraud in fact.   By the contract, appellee sold, absolutely, the coal under her land for a gross sum, reserving no royalty or other interest therein. That part of the clause of the contract relating to a lease of the surface of the land of appellee involved here is as follows : "And for the purpose of enabling said Schuremans to sink pits or shafts and successfully mine and remove said coal, said Schmisseur hereby leases unto them, and to their legal representatives, for the term of thirty-five years, (unless the said coal shall be sooner exhausted, in which event said lease and the right to mine said coal shall cease and expire,) the following," etc.   Then follows a description, by metes and bounds, of the tract comprising the eleven acres.

In our judgment the contract is susceptible of no other construction than that the grantees and their assigns have the whole term of thirty-five years in which to mine and remove the coal underlying appellee's land, without limitation or restriction.   The condition is, simply, that if they shall, before the expiration of the term, exhaust the coal, possession is to be surrendered.   Appellee might have imposed terms requiring exhaustion of the coal as rapidly as it could be mined, or that a stipulated amount should be taken out per month or per year, or some like provision; but she did not do so.   The contract is wholly silent upon that subject, and contains no provision requiring the removal of the coal before the end of the term.   It can not justly be said that appellant, in availing itself of its right under the contract to mine the coal under her land at any time within the term limited, is guilty of fraud, or that its conduct in that respect is in fraud of any right of appellee.   It might well be that a very important element of the value of the purchase of the Schuremans consisted in the right they thereby acquired of controlling the mine and holding the coal for future use.   Appellee, for a sum in gross, parted with

all her right to the coal, and granted a fixed term in which it might be removed, and can not now complain that her grantees or their assigns are exercising the right which was purchased and paid for.

It is insisted, and with much force, that a court of equity should interfere, by way of injunction, to prevent appellant from using its entries and the pit and shaft upon the leased premises for the purpose of removing and delivering coal mined upon its adjacent lands, for the reason, as is alleged, that it is in violation of the contract, and a breach of its conditions. Where a contract of leasing is certain, and the use of the demised premises for a specified purpose is clearly fixed by the agreement of parties, the appropriation of the premises to a use inconsistent with that for which they were demised will frequently afford ground for the interposition of a court of equity by way of injunction; and it is well settled, that whenever the use to which premises are sought to be appropriated is inconsistent with the purposes for which they were let, and the change will operate to the injury of the lessor, the aid of such court may properly be invoked. In respect of purely negative covenants annexed to or contained in contracts or leases, courts of equity will frequently interpose by injunction, and indirectly enforce specific performance of such negative covenants by prohibiting their breach; and it seems to be well settled, that where there is an express negative covenant, courts of equity will entertain bills for injunction to prevent their breach, although the same will occasion no substantial injury, or though the damages, if any, be recoverable at law. This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such conditions and covenants as he pleases touching the mode of enjoyment and use of the land. As said in *Steward* v. *Winters*, 4 Sandf. Ch. 587: "He is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has a

right to define the injury for himself, and the party contracting with him must abide by the definition." (*Hill* v. *Miller*, 3 Paige, 254; *Macher* v. *Foundling Hospital*, 1 Ver. & B. 188; High on Injunctions, 1142.) In this latter class of cases the court proceeds upon the ground that the grantor or lessor having expressly stipulated that the grantee or lessee shall not do the particular thing complained of, the latter is bound to refrain, and the former is not required to submit to the opinions of others as to whether he will or will not suffer substantial injury.

Cases are much more rare, perhaps, where a court of equity has interfered to prevent the breach of a negative covenant which is implied from a positive stipulation. It is said by Wood, Vice-Chancellor, in *Petto et al.* v. *B. N. & T. Ry. Co.* L. J. (N. S.) Eq. 32: "But in a case where the special contract is relied upon, and the negative is inferred from the positive contract, I think the case is weaker than where there is a distinctly negative contract, standing by itself; and the cases of *DeMatto* v. *Gibson*, 3 DeGex & J. 276, (28 L. J. R. Ch. 165,) and *Lumley* v. *Wagner*, 1 DeGex & G. 604, are, so far as I am aware, the only instances in which the court has exercised such a jurisdiction." The question in *Lumley* v. *Wagner* was, as we understand the case, not so much whether a negative covenant should be implied from Wagner's contract to sing, etc., for Lumley, and she be restrained from the breach of such implied negative covenant, but whether the court would restrain her from singing elsewhere, when it could not compel her to perform her covenants with Lumley by singing under his management.

We have been referred to no case holding that a court of equity would exercise its jurisdiction to prevent a breach of a negative covenant unless it was express, or could fairly be implied from the stipulation of the parties, and injury would result to the complainant by its breach. In the one case, as we have seen, equity jurisdiction proceeds upon the ground

of the express stipulation of the parties alone, irrespective of whether substantial injury will be incurred or not. In the other, the parties not having fixed in their agreement, by express covenant, what shall *not* be done, equity proceeds only to prevent irreparable injury. The party not having seen fit to expressly stipulate against the act in his contract, a court of equity will not, by implication, insert it, and then enforce it, unless substantial injury is thereby to be prevented.

The case of *Leavers* v. *Cleary et al.* 75 Ill. 349, is not inconsistent with this view. There, the grantors or lessors had reserved a royalty of ten cents per ton for all coal mined from their land; had conveyed for substantially one-half its value the land upon which the shaft was located, and had agreed to indemnify the lessee against loss in sinking the shaft if coal should not be found within a specified distance from the surfact. It was alleged that Leavers had purchased an adjoining tract of land, and had run an entry or entries from the shaft to the coal under the same, and was about to abandon the mine under Cleary's land, for the purpose of avoiding the payment of the royalty, etc. The court found that injury to Cleary would result, and, practically, that he was remediless at law.

The provision in the contract under consideration, in respect of the leasehold interest, is, simply, that it is granted for the purpose of enabling said Schuremans to sink pits or shafts and successfully mine and remove the coal conveyed to them by appellee. Unquestionably, appellee might, had she seen proper, have restricted the use of the land leased by express stipulation, and have required the lessees to covenant against any use she might have deemed antagonistic to her interests. She did not do so, and as we have seen, a court of equity can not interfere to prevent the threatened use by appellant unless injury results for which appellee has no adequate remedy. As already said, appellant has the right to use the shaft, and the leased premises upon which it is located, for the term of thirty-five years from the date of the contract, for the purpose of mining and

removing the coal under appellee's land, unless it shall sooner exhaust the same. It is not shown or pretended that the use of the entries through the mine in any way interferes with the use, occupation or enjoyment of appellee's land by her. By the sale and conveyance of the fee of the coal, appellee severed it from her estate in the land, and the right of her grantees or their assigns to use the estate thus granted by appellee in the coal, so long as her property is not interfered with or injured in any way, can not be questioned. It is manifest, that until the expiration of the term, or until appellant or its assigns shall exhaust the coal under appellee's land, appellee can have no right of re-entry in the mines or in the leasehold estate.

It is not conceivable how the proposed use of appellant's mine and shaft can result in damage to appellee. Any action brought by her for supposed trespass, for running its cars and tramways through the entries in the mines, or for hoisting and delivering the same at the shaft, or for any use of the leased land, would be answered by the fact that appellant was rightfully in possession under the contract. Nor would any right of action accrue to appellee because of any supposed lengthening of the term for which the eleven acres of land were demised, for, as we have already seen, the demise was for a term of thirty-five years, unless the lessees should, at their option, sooner exhaust the coal under the land. At most, in any action appellee might bring before the expiration of the term, either by the exhaustion of the coal or by lapse of time, her damages would be nominal, only. It follows, that a court of equity has not jurisdiction, upon this second ground, to enjoin the proposed use by appellant of the mines and leasehold estate.

We have already anticipated the third and fourth grounds of equitable jurisdiction urged by counsel. It is manifest from the foregoing that there is no such irreparable injury as will justify the interposition of a court of equity; and no right of action existing in favor of appellee for more than nominal, if

any, damages, there can be no multiplicity of suits, within the meaning of the equitable rule invoked.

We are of opinion that the Appellate Court erred in affirming the decree of the trial court. The judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the circuit court, with directions to dismiss the bill.

*Judgment reversed.*