### Jules C. Jalageas and C. Touchette v. Mrs. B. V. Winton.

1. LEASE—*when terms of, as to character of demised premises, may be enforced by injunction.* An injunction lies to restrain the use of premises for a dram-shop where the same were demised for use as a grocery store.

Bill for injunction. Appeal from the Circuit Court of St. Clair County; the Hon. ROBERT D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1904. Approved. Opinion filed March 17, 1905.

FOREMAN and WHITNEL, for appellants.

DILL & WILDERMAN and W. P. LAUNTZ, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a bill in chancery in the Circuit Court of St. Clair county by appellee, owner and lessor of certain buildings and premises in the city of East St. Louis, against appellants as lessees and occupants of said buildings and premises, to enjoin appellants from conducting in said

premises or any part thereof, a dram-shop for the sale or giving away of intoxicating or malt liquors.

The bill alleges in substance, that on the 10th day of January, 1902, appellee entered into a written lease with appellant Jalageas, whereby she leased to him two store rooms and basement thereunder, "to be occupied as a grocery store," for a term of four years, at a rental of $65 per month; that appellant Jalageas took possession under the lease, and thereafter associated with him appellant Touchette, and they began to and were carrying on the business of keeping a dram-shop, in a portion of the leased premises, by selling therein intoxicating liquors at retail to customers, thereby exposing her premises to the penalties and liabilities imposed upon landlords by the Dram-Shop Act.

The case was tried by the chancellor upon the evidence produced in open court. There is little conflict in the evidence upon any material question of fact in issue.

The undisputed evidence proves that the lease was executed, delivered and accepted as stated in the bill, and that it contained the clause, "to be occupied as a grocery store;" that appellant Jalageas took possession under it and was conducting a grocery store therein until after October 3, 1903; that in the meantime he had associated with him as partner, appellant Touchette, and that thereafter they fitted up one part of the premises with a bar and fixtures for a saloon (dram-shop) stocked it with intoxicating liquors and were selling the same at retail "by the drink" to customers, to be drank on the premises; were keeping what is commonly called a saloon therein. It is also undisputed, that on October 3, 1903, appellee signed a writing as follows: "October 3rd, 1903, I hereby permit J. C. Jalageas & Co. to keep liquors at their store, 311-313 Broadway;" that the premises referred to in this writing are the same as described in the lease, and that at the time appellant Touchette was a partner with appellant Jalageas doing business under the firm name of Jalageas & Co.

Concerning the facts and circumstances attending the

signing of this writing, there is little dispute. Appellee says: "I went in there and gave an order and Mr. Jalageas called me up to the desk and asked me if I would do him a favor, and I said, 'Certainly, if I could I would,' and then he called his partner, Mr. Touchette, and they asked me if I would give them a paper to enable them to sell liquors like Luyties, and I said, 'Yes, certainly,' so I wrote that paper and that is all the conversation we had. I never gave my permission to keep a saloon." In this statement she is corroborated by her daughter. Appellant Jalageas, on cross-examination, stated: "The rent I pay is the same paid before; I use bar fixtures; they are connected with water main; use more water than before; water is paid for by Mrs. Winton; I sell liquor; can't say who wrote paper; it is not my writing. I was there when it was written. In the talk I asked to sell as other grocery stores, Luyties and others. Cavanaugh is my neighbor. Luyties sells by the bottle. They do not keep a saloon as I know of, but there are other grocery stores that had saloons in connection. * * * I told her I wanted to sell like Luyties and others." Appellant Touchette did not testify. It is admitted that no consideration passed or was promised for the signing of this paper, and that appellant Jalageas has paid and appellee has accepted the same rent, since the saloon was opened in the premises as before.

Counsel insist that appellee had knowledge of the fact that appellant was "fixing up the rooms" and arranging them for the purpose of opening and keeping a saloon therein, and is therefore estopped from insisting upon such construction of the lease as she now contends for.

The evidence does not sufficiently support this view of the case to warrant a reversal on that ground. Upon this question appellee was interrogated, upon cross-examination, and said: "I might have been in there a short time before the word came to me that he was selling. I don't remember. * * * I expected him to sell like Luyties. * * * I was there after he made the improvements." And appellant Jalageas testified: "During the time of making those im-

provements Mrs. Winton was there. She came to the store very often; she made no objections. After the improvement was made I first heard of the objection." This is all the evidence we find in the record bearing with any probative force upon that question, and to our minds, if we assume that she did know that the improvements were being made before they were completed, the evidence falls short of proving that she knew that it was the purpose of appellants to open up and keep a regular saloon—dram-shop—in the premises. In this connection appellant was asked to state whether the investments he made in the stock of liquors and changes in the building would have been made had it not been for the consent given by appellee, to which he answered, that they would not. The trial court sustained an objection to the question and answer. This it is contended was error. It would have been proper to have admitted it along with the other evidence, but under our view as to the effect of the consent given under the circumstances proven as by the weight of the evidence, as to knowledge on the part of appellee, of the true purpose of appellants in procuring the consent and making the changes, its rejection is not such error as could affect the ultimate result in this case.

Counsel insist that this case falls under the rule, that, "where a contract may be given two constructions, either of which is reasonable, the one most favorable to the grantee should be adopted." In this we cannot agree with counsel. To our minds the construction contended for by appellants is not, under the evidence in this case, a reasonable construction.

Appellee had leased her premises "to be occupied as a grocery store," for a term of four years, and the lease had more than three years to run. The statute provides that "every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any persons who shall,

by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons; and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, *or who having leased the same for other purposes, shall knowingly permit therein the sale of any intoxicating liquors* that have caused, in whole or in part the intoxication of any person, *shall be liable severally or jointly*  \*  \*  \* *for all damages sustained and for exemplary* damages."

As the lease existed appellee and her property were entirely free from peril and burden imposed by the statute. Now without payment or promise of any consideration of any kind for the additional use, and the peril and burden imposed by the statute where premises are put to such use; and upon the representation that appellants only wanted to sell as Luyties did, by the bottle and at wholesale, she signed a paper reading as follows: "October 3rd, 1903. I hereby permit J. C. Jalageas & Co., to keep liquors at their store, 311-313 Broadway. Mrs. B. V. Winton." Appellant contends that upon this state of case, the words, "keep liquors at their store" should be construed by a chancellor, in a court of equity, to be a grant of permission to set up and keep a dram-shop in a portion of her premises for a period of more than three years yet to run, and thereby during all that time to subject her and her premises to all the perils and burdens imposed by the Dram-Shop Act, upon that business in its most dangerous form, and without any compensation therefor. It is not reasonable. When construed as appellee understood it, 'the consent imposed upon her a risk and burden under the statute fully as great as the language used can be made to support.

Counsel further contend that injunction is not the proper remedy in this case, and say: "The relief sought is, strictly speaking, nothing but *specific performance of contract,*" and cite Consolidated Coal Co. v. Schmisseur, 135 Ill. 371. The facts of the case at bar do not bring it within that feature of the case cited, which counsel urge as applicable

here. This case falls under the general rule, fully recognized in that case: "An unauthorized use of a demised premises may be enjoined, where the use to which the premises are sought to be appropriated is inconsistent with the purposes for which they were let, and where the change will operate to the injury of the lessor." As illustrating the application of this rule, Mr. High, in his excellent work on injunction, Vol. I, 3rd Edition, Section 691, says: "So too, the lessor may restrain his lessee, or those claiming under him or acting by his authority, from converting the ·demised premises to uses repugnant to the terms of the lease, and from making material alterations, as by changing a building rented for a post office into a beer hall, or a dwelling into a warehouse."

The decree of the Circuit Court is approved.

*Approved.*