## Moore, Guardian, etc. v. Lackey Mining Company.

(Decided June 8, 1926.)

### Appeal from Floyd Circuit Court.

Mines and Minerals—Under Coal Lease Granting All Necessary Rights to Successful Mining of "This Coal," Held, that Lessees were Not Entitled to Bring Coal to Surface from Adjoining Lease and Use Structures and Equipment on Lessor's Property to Prepare it for Market.—Under coal lease granting lessees "all the necessary rights and privileges to the successful mining of this coal," held, that lessees were not entitled to bring coal to surface through shaft on leased premises from adjoining lease, and by means of structures and equipment on lessor's property clean,

screen, and load it for market; "this coal" clearly referring to coal on tract described in lease.

MAY, ALLEN & MAYO for appellants.

B. F. COMBS and A. B. COMBS for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

On March 25, 1915, Robert Hays and his wife executed and delivered to B. F. Preston, etc., a coal lease covering 100 acres of land owned by him in Floyd county, Kentucky. The portions of the lease pertinent to the controversy read:

"WITNESSETH: That the lessors this day leases to the lessees herein, all the workable seams of coal on the following described tract or boundary of land (boundary omitted):

"This lease does not include any seams of coal below level of county road.

"The conditions of this lease is as follows: First: The lessee, heirs and assigns is required to work all the workable seams of coal on the above described tract of land and that life of this lease shall be for a period of fifteen (15) years or until all the coal is worked out.

"Second: Lessee is to pay as royalty on this coal (.12½) twelve and one-half cents per ton of 2,000 lbs., railroad weights to govern settlements and said royalty or royalties shall be due and payable on the 25th of each month for the coal mined previous month. The lessors herein grants and bestows upon the lessees all the necessary rights and privileges to the successful mining of this coal, including rough timber and to make such roads and openings as will be or become necessary thereafter, and lessor is to have right to pick timbers to be used for ties and posts for inside purposes. Said lessees, heirs and assigns is hereby given the right to erect all necessary buildings, and when said coal is worked out, buildings are to revert to and become the property of lessors without cost. And lessees further agree not to move machinery and equipment until all workable coal is mined and work is to begin under this lease within thirty days from

date, and not to let mines lay idle except when there are breakdowns, strikes, car scarcity or such conditions as are beyond the control of lessees, and the lessee agrees to pay not less than twelve hundred ($1,200.00) dollars royalty for any one year after first year.

"Lessor reserves one-half acre coal at his present mine for domestic purposes.

"It is understood that if lessees, heirs and assigns fail to pay royalties when same become due for a period of sixty days, such failure shall operate as a forfeiture of this contract and premises revert to lessor without ejectment proceedings."

The grantors in the lease have died and their children inherited and now own the tract of land and the benefits arising in favor of the grantors under the lease. The controversy presented by the appeal grows out of the difference between the guardian of those children and appellee, Lackey Mining Company, owner of the lease, as to their respective rights under it. Appellee also owns a coal lease on an adjoining tract of land. It had opened the mine on the tract of land covered by the lease, and also had opened a mine on the adjoining tract, the coal from each lease being mined and brought to the surface and marketed over tipples located on each of them. Prior to the institution of this action a breakthrough had been made by means of which the two mines were joined, and thereafter appellee abandoned its opening and tipple on the adjoining lease and began to bring to the surface all of the coal taken from both leases through the opening on the Hays lease and to load it for market over the tipple located thereon. Appellants, upon the theory that they did not have the right to do so under the lease in question, instituted this action to enjoin them from so doing. Appellee, claiming the right, resisted, and, upon the trial below, it was adjudged that under the lease appellee had the right to bring all the coal from the adjoining lease to the surface and market it over the tipple on the Hays lease. The appeal is prosecuted from that judgment and presents the questions suggested.

The questions have never been heretofore considered by this court, and the parties have presented to us opinions of the courts of last resort of other states in support of their respective contentions. Appellee

cites and relies upon Consolidated Coal Company v. Schmisseur, 135 Ill. 371, 25 N. E. 205; Lillibridge v. Lackawanna Coal Company (Pa.), 22 Atl. 1035, 13 L. R. A. 627; Westerman v. Pa. Salt Mfg. Company (Pa.), 103 Atl. 539; Moore v. Indian Camp Coal Company (Ohio), 80 N. E. 6; New York, etc., Coal Company v. Hillside, etc., Iron Company (Pa.), 74 Atl. 26, and Wordsworth Coal Company v. Silver Creek Mining Railroad Company, 40 Ohio St. Reps. 559, to sustain its contention that the lessees under the lease in question have the right to bring to the surface and put over the tipple on the Hays lease all of the coal mined by it from adjoining lands under lease to it. Appellants rely largely upon Clayborn, et al. v. Camilla Red Ash Coal Company, et al., 128 Va. 383, 105 S. E. 117, as denying its right to do so.

Our careful consideration of the cases cited and relied upon by appellee upon which the judgment of the chancellor was based has led this court to conclude that appellee and the chancellor misconceived the import of those cases. Perhaps the outstanding opinion among those relied upon by appellee is that of Lillibridge v. Lackawanna Coal Company, *supra.* A careful consideration of that case, as well as of all the others mentioned, will disclose that it and they dealt with the question of the right of the owners of the fee in the coal or of the lessees of the coal in and under a tract of land to use the underground passages made in mining or in removing the coal for transporting coal from other tracts of land. The cases cited, as well as others referred to in those opinions, have established the doctrine that one who owns the fee in coal or one who merely removes it as lessee or licensee has the right during the time that he may under his deed or lease mine coal from a given tract of land use the underground passages or gangways made by removing the coal from the chamber containing it for transporting coal from other lands owned by or under lease to him. Those cases, however, dealt exclusively with the respective rights of the parties to the underground passages made by the removal of the coal. While those cases for their respective jurisdictions established that rule, none of them, save in cases where the lease or the instrument granting the fee in the coal authorized it, established the principle that the coal from adjacent lands might be brought to the surface through the pits, shafts or entries from the surface of a given lease and

its surface be used as the dumping ground of the refuse therefrom, and the structures on its surface be used in mining or loading or marketing such coal. In Consolidated Coal Company v. Schmisseur, *supra,* where appellant owned the coal in fee, construing the terms of the particular instrument under which the estate in the coal was granted to it which also granted the right to use 11 acres of the surface in the mining operations, it was held that the coal company had the right to use that particular 11 acres and the entries to the underlying coal made through it for the purpose of removing and marketing the coal mined from adjacent lands owned by or under lease to the coal company. Our consideration of the reasoning of the court in reaching that conclusion under the particular terms of the instrument then in question leaves us with the impression that it was not sound. The Supreme Court of Pennsylvania, whose opinions are largely relied upon by appellee, has considered the exact question here presented and determined it adversely to appellee's contention. In Vogel v. Webber, 28 Atl. 226, the owners in fee of a 15 acre tract of land conveyed to another absolutely all the merchantable coal underlying it. The owner of the coal leased it to Vogel, who also held a lease upon the coal underlying an adjoining tract. The lessee under his lease of the 15 acre tract asserted the right to bring the coal mined from the adjoining tract to the surface of the 15 acre tract and load it for market therefrom. The court in its opinion denied him such right. In a subsequent case, Webber v. Vogel, 42 Atl. 4, the position was taken that Vogel v. Webber, *supra,* overruled the previous opinions of the court, especially that of Lillibridge v. Lackawanna Coal Company, 143 Pa. St. 293, 22 Atl. 1035, and that the owner of the coal did not have the right to use even the underground passages made by removing the coal in transporting coal from the adjoining tract. The opinion of the court in the case of Webber v. Vogel, *supra,* makes clear the distinction and discloses the error into which appellee has fallen and on which the judgment herein was based. The cases relied on by appellee deal only with the right of the owner or lessee of coal to use the underground passages left after removing the coal in transporting coal from one part to another of the adjacent lands. Those cases do not decide and have no reference to the question as to whether or not the owner or lessee of coal underlying a tract of land

may use the pits or shafts or openings to the surface and the surface in cleaning, screening, loading and marketing coal from adjacent lands. Such rights must be contracted for and granted by the deed, lease or reservation.

The distinction between the use of the underground pasages made in removing coal, whether owned or under lease, and the use of the surface is clearly drawn and the established principles from opinions dealing with the question are well stated in the text of 40 Corpus Juris, section 612, page 1012, reading:

"Use of Premises in Connection with Adjacent Mines. Unless there is a provision in the lease to the contrary, a lessee of mineral has the right, as the owner thereof and the space it occupies, to use the gangways and passageways cut through the mineral lying under the leased premises for the purpose of going to and removing mineral owned by the lessee under adjacent lands, particularly where the lessor's property is not interfered with or injured. But where the right is given to use the lessor's property in a specified manner in connection with mining operations on adjacent land, the lessee is not entitled to use it in any other manner.

"Use of Surface. Except to the extent that the right to use the surface of the leased premises in connection with adjacent mining operations is expressly granted or necessarily implied, a mining lessee cannot use his surface rights or privileges for the purpose of taking out mineral from other lands, not owned by the lessor; nor has he the right to prepare the mineral mined from other lands at the lessor's breaker, or to use the timber leave, or the water leave, for the purpose of such outside mining operations, or use the openings and apertures on the leased land to mine adjacent lands not owned or demised by the lessor."

Here the question is not presented, and consequently we will not establish the principle for this jurisdiction that the owner or lessee of coal underlying a tract of land may use the underground passages made in the course of the mining operations for transporting coal from one part to another of adjacent tracts of land. Appellee claims the right under the Hays lease to bring the coal from its adjoining lease to the surface through the shaft or entry or opening on the Hays lease, and there by

means of the structures and equipment on the Hays lease to clean, screen, and load it for market. It will be observed that under the lease in question the lessors granted unto the lessees "all the necessary rights and privileges to the successful mining of this coal." By that particular language the lessees' rights to the use of the surface was confined to such rights as might be necessary to the successful mining of "this" coal, clearly referring to the coal on the particular tract of land described in the lease. Under that lease, appellee has the right to erect on the surface of the tract of land described therein only such structures, including miners' houses, as are necessary to the successful mining of the coal underlying it, and those structures and houses and the surface of that tract of land may not be used in mining coal from any other tract. Appellee admits having connected the two mines by extending the underground passages from one lease to the other, and that it has been removing and unless prevented will continue to remove the coal mined from the adjoining lease through the opening to the surface of the Hays lease, and has been cleaning, screening, and loading it by use of the structures upon the Hays tract of land, and intends to continue to do so. The lease in question granted to it neither expressly nor by implication any such right. The chancellor erroneously refused the injunction sought herein and dismissed appellants' petition.

For the reasons indicated, the judgment herein is reversed and this cause is remanded, with direction that a judgment in conformity herewith be entered.

Whole court sitting.