PAUL G. WHITE and REBA PEARL WHITE, Respondents, v. BEVIER COAL COMPANY, a Corporation, Appellant, No. 43615—261 S. W. (2d) 81.

Division Two, October 12, 1953.

*Norman Johnston* and *Edwards, Hess & Collins* for appellant.

314

*James Glenn* for respondents.

WESTHUES, C.—Plaintiffs filed this suit against the defendant Bevier Coal Company for the purpose of determining the title, rights, and interest of plaintiffs and the defendant in a tract of land containing about 20 acres in Macon County, Missouri.

The trial court entered a decree and the defendant Coal Company appealed. The appeal was taken to the Kansas City Court of Appeals and that court transferred the case to this court on the ground that title to real estate was involved. See 254 S. W. (2d) 42.

The issue as presented by plaintiffs' petition and the answer of the defendant concerns the extent of the easements owned by the defendant under a deed to the 20-acre tract of land in controversy. More to the point, the question is, has the defendant Coal Company a right to construct an east-west roadway over and across the 20 acres for the purpose of transporting coal mined from lands to the west of said tract to ▮ a tipple located east of the 20 acres? Plaintiffs claim the Coal Company has no such right while the defendant Coal Company claims it has. Since the question of whether the Coal Company owns an easement over plaintiffs' land is directly in issue, this court has appellate jurisdiction. 28 C. J. S. 620, Sec. 1b; Chapman v. Schearf, 360 Mo. 551, 229 S. W. (2d) 552, l.c. 553 (1).

The facts as shown by the record are as follows: Prior to June, 1939, the Binkley Mining Company owned and operated coal mines in Macon County, Missouri. It owned the 20 acres in question and other lands. On the 28th of June, 1939, the Binkley Company conveyed by deed the 20 acres in question to George C. and Ethel Ray. This deed contained certain reservations. The Rays in turn conveyed their interest in the land to the plaintiffs, Paul G. and Reba Pearl White. The Binkley Company in July, 1947, conveyed all of its coal mining property to the defendant Bevier Coal Company, including the interest of the mining company in the 20 acres. The reservations in the deed of June 28, 1939, are the subject matter of this case. These reservations were subdivided in the trial court's opinion into five divisions. They read as follows:

"(A) All of the South half of the Northwest Quarter of the Southeast Quarter of Section 22, Township 56 North, Range 15 West of the 5th P.M., Macon County, Missouri, with the exception of woven wire fences and all farm buildings, except the barn which is on the South half of the Northwest Quarter of the Southeast Quarter aforesaid.

"(B) From the foregoing, party of the first part reserves all of the coal and minerals in the ground under and beneath the surface of the entire described tract.

"(C) Party of the first part further reserves therefrom a roadway described as follows, to-wit: Beginning at the Southeast corner of the Northwest Quarter of the Southeast Quarter of Section 22 aforesaid, thence North 660 feet, thence West 264 feet, thence South 660 feet, thence East 264 feet to the point of beginning, containing 4 acres, more or less, which said roadway is reserved for the use and benefit of the party of the first part, its successors and assigns.

"(D) Party of the first part further reserves the right to use any part of the entire tract aforesaid for a right of way for a Railroad and truck roads, or for the purpose of moving and transporting mining machinery, strip mining shovels and all other equipment over and across said tract.

"(E) Party of the first part further reserves the right to use any part of the entire tract aforesaid for drainage or ditch purposes free from any claims for damages to parties of the second part, their heirs and assigns, and parties of the second part for themselves, their heirs and assigns, by the acceptance of this deed, expressly waive any claim for damages caused by the use of said lands for said purposes."

The dispute giving rise to this lawsuit was over the interpretation of subdivision (D) of the reservations. Plaintiffs say, and the trial court agreed, that the reservation referred to gave the defendant a right to use the 20 acres to transport only coal mined on the 20 acres and not coal mined on lands lying to the west thereof. Note what plaintiffs say in their brief:

"As stated above, if the grantor desired to reserve a road running East and West across the tract in dispute to haul coal from any and all points, it could have been done so simply and easily in the deed. All question would have been avoided by so doing. The fact that the reservation was not so worded is clear and convincing evidence that no such road as has now been constructed or the use which appellant now makes of the road was ever intended."

 The Coal Company constructed a roadway over and across the 20 acres from east to west. The roadway was so constructed that it will carry heavy loads of coal and the defendant intends to use the road to haul coal mined on lands to the west to its tipple which is located about a mile east of the 20 acres. The method of mining the coal is what is usually called "strip mining" or the open pit method.

The trial court in its opinion had the following to say:

"It will be noted that sub-divisions (D) and (E) reserving easements for railroad or truck roads and for moving mining

machinery, strip-mining shovels and other equipment over and across said tract, does not, in express terms, or by any terms used in the deed, from which it may be fairly implied that it was the intent of the parties to confer upon the holder of the easement the right to transport coal mined on other lands over, upon or across said lands, or to permit the use of the same by railroads, truck roads or machinery other than in mining the coal from under the particular twenty-acre tract in controversy.''

The trial court held that under the reservations in subdivisions (D) and (E), the Coal Company has the right to use the surface of the 20 acres only in so far as may be necessary to mine and remove the coal from under the 20 acres. We are unable to give the reservations such a narrow meaning.

■ Plaintiffs in their brief under point 1 have the following to say:

''The language of the deed and reservations contained therein is clear and unambiguous, the intention of the parties must be gathered from the four corners of the instrument. It is what the grantor said and not what it intended to say.

''White v. Meadow Park Land Co., 240 Mo. App. 683, 213 S.W. (2d) 123.

''Rummerfield et al. v. Mason, 352 Mo. 865, 179 S.W. (2d) 732.

''Tripplett v. Tripplett (Triplett v. Triplett), 332 Mo. 870, 60 S.W. (2d) 13.

''16 Am. Jur. Sec. 165, p. 530.''

■ We have no fault to find with the above declaration of law. We also agree with the following as stated under point 7:

''In the absence of an express agreement, appellant, owner of coal or mineral rights, cannot use the surface, owned by respondents, in producing, cleaning, marketing or in any way handling coal mined and produced on other lands.'' Citing cases.

Cases were cited in support of the above point but we need not review them because we consider that statement to be the established rule. See Moore v. Lackey Mining Co., 215 Ky. 71, 284 S.W. 415, 48 A.L.R. 1402, and Annotations beginning at page 1406.

■ There is also a well established rule of law that where an owner of land conveys mineral rights in his lands to another, the right to take the mineral from the land in the usual manner passes to the purchaser with the grant. 58 C. J. S. 332, Sec. 159b; 36 Am. Jur. 402, Sec. 177; Jilek v. Chicago W. & F. Coal Co., 382 Ill. 241, 41 N.E. (2d) 96, 146 A.L.R. 871, and Annotations beginning at page 900; Trklja v. Keys, 121 P. (2d) 54, 49 Cal. App. (2d) 211.

■ In this case, the Binkley Company by the deed of June, 1939, conveyed the 20 acres to the Rays, but by subdivision (B) it reserved all of the coal and minerals in and under the ground. The right to go upon the land and remove the coal was thereby implied. By subdivision (C), the Binkley Company expressly reserved a north and

south roadway, describing it by metes and bounds. If (B) and (C) had been the only reservations in the deed, the Binkley Company would have had the right to go upon the 20 acres and remove therefrom all coal contained therein. However, the mining company would not have had the right to construct roadways on the 20 acres for the purpose of transporting coal from other coal fields. The only road the company could have used for that purpose would have been the road described in reservation (C).

Under the decree of the trial court, the Bevier Coal Company, as grantee of the Binkley Company, has no more interest or easement in and to the 20 acres than was reserved by subdivisions (B) and (C) of the reservations. This in effect renders subdivisions (D) and (E) meaningless and of no force. Courts in construing deeds should consider the whole thereof. 26 C.J.S. 324, Sec. 83. The language used in subdivisions (D) and (E) seems to us not to be ambiguous. Subdivision (C) provides that the "Party of the first part *further* reserves" which means an addition to the reservations before named. (Italics ours) What are the reservations enumerated in subdivision (D)? Using the language of the reservation, they are "the right to use *any part of the entire tract* aforesaid for a right of way for a Railroad and truck roads, * * *." (Italics ours) Was that reservation necessary to implement the reservations named in (B) and (C)? We think not. The reservation then continued "or for the purpose of moving and transporting mining machinery, strip mining shovels and all other equipment *over* and *across* said tract." (Italics ours) Can that reservation be construed to mean that the Coal Company reserved only the right to move machinery onto the 20 acres for the purpose of mining the coal contained in the 20 acres? The answer is obvious. Webster's New International Dictionary, Second Edit., tells us that the word "over" indicates "passage either above the substance or thing, or on the surface of it, and beyond; specif.: across; from one side to the other of; to or at a place beyond; * * *," and the word "across" means "From one side to the opposite side of." Such a reservation as contained in subdivision (D) would be wholly unnecessary for the Coal Company to mine coal located on the 20 acres.

We are of the opinion that by subdivision (D) the Coal Company retained the right to construct a roadway over and across the 20-acre tract; that the roadway may be used for any purpose connected with the mining operations of the defendant company. Subdivision (E) supplements subdivision (D). By it the Coal Company is permitted to construct such ditches as may be necessary in the mining operations or in building roads.

In so construing the various reservations we have followed the rule contended for by the plaintiffs as indicated by the authorities cited under points 1 and 7 of their brief. We have considered all of the provisions of the reservations in reaching our conclusions as to

their meaning and effect. We have not disregarded or treated as surplusage any parts thereof. 26 C. J. S. 328, Sec. 84; Davidson v. Davidson, 350 Mo. 639, 167 S.W. (2d) 641, l.c. 643 (8) ; Ott v. Pickard, Mo., 237 S.W. (2d) 109, l.c. 111, 112 (3, 4) (5).

The trial court heard evidence introduced by both plaintiffs and the defendant. A plat showing all the lands wherein the Coal Company had any interest was admitted in evidence without objection. Plaintiffs contend the surrounding circumstances should not be considered unless the language of the deed be deemed ambiguous. Plaintiffs say there appears to be no ambiguity. We agree with plaintiffs.

The judgment of the trial court is hereby reversed and set aside and the case is remanded to that court with directions to enter a decree in conformity with this opinion.

It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.