HOOD, Judge.
This is an action for a declaratory judgment in which plaintiff seeks an interpretation of a lease contract. The suit was instituted by Sebastian Giamanco, the lessor, against Clifton A. Fairbanks, Jr., and J. A. Stinson, the lessees. Judgment was rendered by the trial court interpreting the lease in accordance with the prayer contained in plaintiff’s petition. Defendants have appealed.
On September 20, 1963, plaintiff and defendants entered into a written lease contract, under the terms of which plaintiff leased to defendants a building in Alexandria, Louisiana, to be used by defendants for the operation of a grocery store. The lease stipulates that it is for a primary term of five years, and that the lessees have the right to renew or to extend it for an additional period of five years.
*348 Defendants occupied and jointly operated a grocery store in the building from the date the lease was executed until sometime later when Stinson assigned his interest in the lease to Fairbanks. After that assignment was made, Fairbanks has continued to occupy the building and to operate a grocery store in it. Fairbanks, therefore, is the principal defendant, although the suit was instituted against both of the original lessees.
The premises leased to defendants is described in the lease contract as follows:
“That certain brick and wood building owned by Lessor and presently occupied by him as a grocery store, said bidding being located on the property of Lessor at the corner of Jackson Street and Texas Avenue in the City of Alexandria, and bearing Municipal No. 3306 Jackson Street, said building being located on the property shown in heavy blue lines on the attached plat of survey.”
Attached to the lease is the plat of survey which is referred to in the description of the leased premises. This plat shows the entire tract of land which was owned by plaintiff near that street intersection at the time the agreement was entered into. According to that plat, the land then owned by the Lessor is located near the intersection of Texas Avenue and Jackson Street. It is bounded on the east by Texas Avenue, having a frontage of 167.07 feet on that thoroughfare, and it is bounded on the south by Jackson Street, with a frontage of 248.55 feet on that street. The building described in the lease is located in the southeastern part of that lot.
The lease contract contains the following provisions:
“It is agreed and understood that Lessor may at any time he desires during the term of this lease undertake to construct on the property shown on the plat of survey attached hereto and made a part hereof other commercial buildings. In such event, Lessor may elect to construct a building for use as a grocery store, which building will have a minimum area of two thousand (2,000) square feet for sales and five hundred (500) square feet for storeroom space and will be of the same general type of construction as the existing building covered by this lease. In the event Lessor desires to undertake this construction, the building that will be used for a grocery store will be located across the rear line of the property shown on the attached plat of survey and will have a depth of a minimum of forty (40) feet and maximum of fifty (50) feet. The building that Lessor may construct for use as a grocery store will be located so that its wall nearest Texas Avenue will be located no more than sixty (60) feet from the right of way of Texas Avenue.” (Emphasis added.)

“If Lessor elects to construct a grocery store building, as soon as said building is completed Lessee will immediately move his business operations to the new building, which will thereafter be substituted for the existing building under this lease and Lessee’s occupancy of the new building will be subject to all the terms and conditions of this lease. In such event, Lessee will be obligated to move to the new building at his sole cost and expense, but to assist' Lessee in paying for such cost, Lessor agrees that Lessee can occupy the new building for one month without payment of any rent. As soon as Lessee has vacated the existing building, Lessor will commence the destruction of the existing building so as to provide additional parking area for the use of Lessee and other occupants of the building presently located or to be located in the shopping center and Lessee agrees that he will finish the destruction of said building as rapidly as possible, with a maximum time for the completion of the demolition of no more than sixty (60) days.”
*349 On March 20, 1964, or about six months after the above mentioned lease contract was entered into, plaintiff acquired from James N. Chambers a parcel of land which is located north of and adjacent to the lot on which the leased building is located. This parcel of land has a frontage of 50 feet on Texas Avenue, with a depth of 160 feet. About two years after the Chambers property was acquired, plaintiff decided to construct a shopping center on the property owned by him at that intersection. In connection with and as a part of that project he proposed to erect a new building for use as a grocery store, his purpose being to require defendant to move into the new building pursuant to the above quoted provisions of the lease contract. Giamanco, through his attorney, formally notified defendant Fairbanks on August 29, and again on September 16, 1966, of his plan to construct such a building, and he informed defendant that upon completion of the new building he would call upon him to transfer all of his grocery store operations into the new building, following which the old store building then being occupied by defendant would be demolished.
The new building which plaintiff plans to construct for defendant’s use is to be located partly on the original lot of ground which plaintiff owned when the lease was entered into, and partly on the new parcel of land which he acquired from Chambers. The building is designed to face south. It is to be 50 feet wide and 60 feet deep,- and its east wall will be located 40 feet from the right of way of Texas Avenue. The front 22 feet of the building will be on the original lot which was owned by plaintiff when the lease was executed, and the rear 38 feet of it will be on the parcel of land which plaintiff later acquired from Chambers. The rear 10 feet of the building will be partitioned off and plaintiff will retain the use of that area. He intends, however, to require defendant to move his grocery store operations into the remainder of the building, extending from the front of it to a depth of 50 feet.
Plaintiff began construction of the new-building shortly after he notified defendant of his plan to do so. While it was being constructed, defendant advised plaintiff that the new building was not being built in accordance with the above quoted provisions of the lease, and he stated that for that reason he would not move into the new structure after the construction was completed. Giamanco then instituted this suit in which he seeks a declaratory judgment decreeing that the new building conforms to the lease agreement and that defendant will be obligated to move into it after construction of it has been completed. The record indicates that construction of the building was discontinued until the issues presented here could be determined.
Defendant concedes that plaintiff has complied with the terms of the lease insofar as it relates to the floor space in the new building and the distance the building is from Texas Avenue. He contends, however, that the above quoted provisions of the lease contract cannot be invoked, and that he cannot be compelled to move into the new building, because that building is not being built entirely on the property which was owned by plaintiff at the time the lease was executed. He takes the position that since the new building is located partly on the parcel of land which plaintiff acquired from Chambers, plaintiff has not complied with the above quoted provisions of the lease and he thus cannot compel defendant to move his grocery store operations into that new structure.
The record shows that the front of the building which plaintiff proposes to construct will be 145 feet from the intersection of Jackson Street and Texas Avenue. If a new building of the size required in the contract should be constructed entirely on the lot originally owned by plaintiff, but along its rear line, all as defendant contends is required, then the front of that building would be 117 feet from the inter *350 section. Defendant contends that plaintiff’s plan to locate the building 28 feet further from the crossing than he feels it should be will compel him to change the type store he has been operating.
As we have already noted, the lease provides, with reference to the construction of a new building for the lessee, that “In the event Lessor desires to undertake this construction, the building that will be used •for a grocery store will be located across the rear line of the property shown on the attached plat of survey * * * ” A determination of the issues presented here depends largely upon the meaning which is given to the word “across,” as that word is used in the above quoted provision of the lease. Plaintiff argues that this provision means, and that the parties intended, that the new building could be located partly on one side of the rear line of the property and partly on the other side of that line. Defendant argues that the parties intended that the new building should be constructed entirely on the original lot owned by plaintiff, and that the back of that building should be located “along” the rear line of that original lot.
The trial court rendered judgment decreeing that the proposed building conforms to the lease agreement, and that after completion of said building defendant Fairbanks will be obligated to move his business operations to the new building. In his reasons for judgment the trial court said:
“The recital in the lease that the building was to be across the back property line is acknowledgment by both parties that the grocery store was to be moved as far back as it possibly could be. If it were the intent of the parties to limit the distance that the grocery store was to be moved back then it should have been recited in the lease that it was only to be moved back a distance of 50, 60, 80 or 100, or whatever distance the defendant was agreeable to. I do not believe that any of the parties at the time of the execution of the lease specifically intended that there was to be any specific restrictions as to the distance that the building was to he moved back from Jackson Street.”
At the trial, and over the objection of defendant, the trial judge admitted parol evidence to explain the intent of the parties in agreeing that the new building should be built “across” the rear line of the property. On this appeal both parties contend that the lease contract is unambiguous, and that the parol evidence which was produced at the trial should not have been admitted. They argue, however, that if the parol evidence is considered it supports their respective, but differing, interpretations of the agreement.
When the terms of a written contract are susceptible of more than one interpretation, or when there is uncertainty or ambiguity as to the provisions of the contract, parol evidence is admissible to clarify the ambiguities and to show the intentions of the parties. LSA-C.C. art. 2276; Capizzo v. Traders and General Insurance Company, 191 So.2d 183 (La.App. 3d Cir. 1966). In the instant suit we think there is enough ambiguity in the lease contract to permit the introduction of parol evidence to explain the intent of the parties.
We have considered the parol evidence, but we find it to be conflicting and of little assistance to us in resolving the issues presented here. Generally, the parol evidence shows that plaintiff had considered purchasing the adjacent Chambers parcel of land before this lease was entered into, with the idea of treating both tracts as one for the purpose of constructing a shopping center. We are convinced that he still had such a plan in mind when he leased the store building to defendants. The evidence fails to show, however, that he ever communicated these plans to defendants before the lease was executed, so we cannot say that there was ever a specific agreement or understanding that the *351 “new building” was to be constructed partially on the adjoining property. We base our conclusion in this case, therefore, largely on the language which is used in the contract, and on the circumstances which existed at the time the lease contract was entered into.
The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to grammatical rulés, as to general and popular use. LSA-C.C. art. 1946.
Webster’s Third New International Dictionary gives the following appropriate definitions of the word “across”, when that word is used as a preposition:
“From one side to the opposite side of; from one point in time to another; so as to intersect or pass at an angle (as a right angle); crosswise of; at an angle with the length, direction, or course of; on the other side of.”
The word “along,” when used in the same manner, is described in that dictionary as:
“Over the length of; in the course of; in a line parallel with the length or direction of or on a line through the center or central axis of.”
In some instances the word “across” has been treated as being synonymous with the term “over.” White v. Bevier Coal Co., 364 Mo. 313, 261 S.W.2d 81.(1953); Commonwealth v. Warwick, 185 Pa. 623, 40 A. 93 (1898); Illinois Cent. R. Co. v. City of Chicago, 141 Ill. 586, 30 N.E. 1044, 17 L.R.A. 530 (1892). In some cases it has been considered to be synonymous with the word “along,” and in others “across” has been held to mean something different from “along.” Mt. Vernon Telephone Co. v. Franklin Farmers’ Co-Op. Telephone Co., 113 Me. 46, 92 A. 934 (1915); Coleman v. City of Everett, 194 Wash. 47, 76 P.2d 1007 (1938); Zimmerman v. American Telephone & Telegraph Co., 71 S.C. 528, 51 S.E. 243 (1904); Postal Telegraph Cable Co. v. Norfolk & W. R. Co., 88 Va. 920, 14 S.E. 803 (1892).
The following definition of “across” is given in Corpus Juris Secundum:
“An ámbiguous term, which varies in meaning according to the context and subject matter. The word has been construed to include, not the entire distance from side to side, but only a portion, determined by the declared intention of the parties to a contract, or by the legislative intention in a statute. The word has been defined or employed as meaning: athwart, crosswise, from side to side, or quite over; in a direction opposed to the length; upon; within. In some instances the word has been equivalent to or interchangeable with ‘in and through,’ or ‘in and upon,’ or ‘over,’ or ‘upon and along.’ ” 1 C.J.S. at page 921.
We agree with the last cited authority that the word “across” is an ambiguous term, which varies in meaning according to the context and subject matter. We believe, however, that the common and usual meaning attributed to that word is the one most often given to it by dictionaries, and that is “from one side to the opposite side of,” or “crosswise,” or “at an angle with the length, direction or course of.” In general and popular use, we think the word “across” is distinguished from the word “along,” and that the two terms ordinarily are not treated as being synonymous.
In the instant suit we agree with the trial judge that the parties, by including the above quoted language in the contract, intended that the new store building was to be located as far back from Jackson Street as possible in order to allow the maximum amount of parking space. If the parties had intended that the new building was to be located entirely on plaintiff’s original tract, and that the back of that building was to be “along” or adjacent to the north *352 property line of the original tract, we think some language to that effect would have been used. For instance, such terms as “along” or “bordering on” or “against” or “adjacent to” would have been used instead of the word “across.”
Our conclusion, like that of the trial judge, is that the parties intended that the new store building was to be located as far back from Jackson Street as possible. They did not intend that the building was to be constructed wholly on plaintiff’s original tract of land or that the back wall of the building had to be “along” the north boundary of that original tract.
We have considered the fact that the first sentence of the quoted portion of the contract provides that the lessor has the right to construct other commercial buildings “on the property shown on the plat of survey.” Defendant argues that this stipulation must be related to the later provisions of the lease that the lessor may construct a new building for defendant’s grocery store operations, and that the parties thus specifically agreed that the new building must be located “on the property” shown on that plat. We do not agree. The provision to the effect that plaintiff may construct other commercial buildings “on the property” does not preclude him from erecting a building partially on the land shown on the plat and partially on some adjacent tract of land. We do not interpret it as meaning that the new building must be constructed entirely “on the property” shown on that plat.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.