GULOTTA, Judge.
This is a suit for wages and benefits due plaintiff, Mrs. Betty Borne, under a written contract with defendant, The Magnolia School for retarded children. Unlike ordinary schools, the Magnolia School operates eleven and one-half months a year, beginning September 1 and ending August 15.
For the school year beginning September 1, 1968, plaintiff was employed as a teacher at a monthly salary of $387.50. On March 17, 1969, she was notified by letter that her employment had been terminated because of unsatisfactory service, and she was given two weeks’ pay and accrued sick leave. Plaintiff had been employed by defendant from 1961 until discharged.
This action is for the balance of plaintiff’s salary from the date of termination until the conclusion of the school term, August 15, 1969. It was stipulated that the amount of the benefits and wages is $1,-800.00.[1]
The trial court concluded this was a contract for term and rendered judgment for plaintiff in this amount.
The issues before us are: (1) whether the contract of employment between plaintiff and defendant was for a specified term or was terminable at will, and (2) if determined that the contract was for a term, whether there was sufficient cause for termination.
The contract contains the “TERMS OF EMPLOYMENT” and lists September 1 as the “Effective Date” of the agreement. Paragraph I sets out a definite period of time for employment:
“I. The teaching personnel is required to work approximately lP/z months each year beginning the first or second week in September through the third week of August. During the last two weeks of August, school is recessed to permit the children to return to their families. School is also recessed for two weeks during Christmas holidays and certain other days, such as Good Friday, Mardi Gras, Thanksgiving, All Saints Day, Fourth of July, and other such holidays as specified by the administrator. The regular hours of work are from 8:00 a. m. until 3:20 p. m. Classes begin at 8:45 a. m. but teachers are required to report to their respective classrooms or attend staff meetings after signing in at the office.” (emphasis our.s)
The remainder of the contract prescribes the procedure for sick leave and outlines the responsibilities of the teacher for the school year. However, Paragraph IV contains a confusing provision which lends ambiguity to the contract and is contradictory when read together with the other provisions. It reads:
“IV. Although this document is not a contractual arrangement for a specified duration of time, it is understood that the signing of this instrument obligates the teacher to present herself or himself for employment on the “Effective Date” shown and necessarily implies that a position will be furnished at that time by Magnolia School.” (emphasis ours)
By this provision, it appears that the teacher is obligated to work as of the “Effective Date” which in the present case is September 1, 1968, through August 15, 1969. Yet, this same provision states that the contract is not for a specified duration *795 of time. In our opinion, to set up a specific term within an agreement, which meticulously assigns the obligations of the employee during that said term, and then thereafter, within the same document, attempt to exonerate the employer from its obligation over the specified term (by disclaiming any term exists) destroys the purpose of the contract and the employee’s right to rely on its provisions.
Our code dictates that ambiguous clauses are to be construed so as to give effect to the contract rather than to cause indefiniteness in interpretation. LSA-R. C.C. arts. 1951, 1952, and 1955.[2] Furthermore, the school supplied the contract, and it has been clearly established that ambiguity or uncertainty in a contract should be construed against the party preparing it. LSA-R.C.C. art. 1957; Kuhn v. Stan A. Plauche Real Estate Company, 249 La. 85, 185 So.2d 210 (1966); Dickerson v. Millers Mutual Fire Insurance Co. of Texas, 139 So.2d 785 (La.App.2d Cir. 1962).
We, therefore, find that the first paragraph setting out a term of eleven and one-half months is controlling despite the phrase in Paragraph IV stating the contract is not one for a term. The tone and purpose of this contract in its entirety are irreconcilable with that one provision.
Accordingly, we are in agreement with the trial judge that this document should be construed as a contract for term.
Having so determined, we must ascertain if it was terminated for cause. LSA-R.C. C. art. 2749.[3]
Clearly, the only reasonable construction of Paragraph V of the contract is that a serious or valid reason for firing a teacher is required.
It reads:
“V.. If at any time termination of employment is deemed, necessary, a reciprocal understanding will be that two weeks prior notice will be furnished.” (emphasis ours)
We are unable to find a sufficient showing of fault or cause to justify the dismissal of plaintiff from the faculty at Magnolia five months before the termination date of the contract. On the contrary, the evidence preponderates that Mrs. Borne was competent and quite successful as a special education teacher. Letters from two of her fellow teachers who had worked closely with plaintiff, Mrs. Helena Eakers and Mrs. Joan Turcotte, enthusiastically described her as cooperative and competent. The record indicates that she went far beyond the call of duty with her students giving special attention to them on her own time, including weekends. Daniel Graham, former executive director, who had worked with plaintiff for years at the school, also testified to her competency and cooperativeness. The fact that plaintiff was employed by the school for eight years speaks for her ability in this field and the school’s apparent regard for her.
The executive director who authorized the firing of plaintiff, Billy Miller, did not testify. The only statement as to why *796 plaintiff was dismissed was in answers to interrogatories of Leonard McCaffery, Coordinator of Special Education, who purportedly received his instructions from Miller. He indicated that plaintiff’s attitude toward the board of directors and executive personnel was antagonistic, that plaintiff refused to cooperate in the daily activities at the school and was incompetent. No evidence whatsoever of incompetence was presented. The only “hint” in the record that plaintiff was at fault or had acted in a way which would not be in the best interest of the school was a letter written by her on October 13, 1968, to the Board which McCaffery described as “scathing”. The letter, though admittedly in strong language, appeared to be a plea on behalf of all personnel for a valid public explanation as to why certain persons were fired with no reasons given. From the letter, it seemed evident that plaintiff’s main interest was the school itself, since morale among faculty was at an all time low because of the lack of security and feeling that any and all jobs were in jeopardy. The letter expressed sincere concern for the direction the school was taking. Plaintiff was addressing the Board in an honest attempt to help.
We cannot permit an individual to be penalized for expressing dissent in this manner, particularly when her motive seemed clearly in the interest of harmony and cohesiveness. Absent proof of plaintiff’s unsatisfactory performance in her duties and responsibilities, we cannot find a sufficiently serious complaint against her to warrant her unexplained dismissal.[4]
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.
Affirmed
REGAN, J., dissents with written reasons.

. The stipulation was predicated only on the possibility of the court concluding that plaintiff was entitled to a judgment in her favor.

. LSA-R.C.C. art. 1951 reads:
“When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory.”
and LSA-R.C.C. art. 1952 reads:
“Terms that present two meanings, must be taken in the sense most congruous to the matter of the contract.”
and LSA-R.C.C. art. 1955 reads:
“All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.”

. LSA-R.C.C. art. 2749 reads:
“If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.”

. Plaintiff was sent a letter on March 17, 1969, stating (after eight years of employment) :
“Dear Mrs. Borne:
“Your employment at the Magnolia School has been terminated because of unsatisfactory service.
“Please find enclosed a check for next pay period, plus sick days not reimbursed.
Magnolia School, Inc.”