FRUGÉ, Judge.
This suit arose from a contract dispute. Defendant-appellant, Gossett Demolishing Company, Inc. (Gossett) contracted with the State of Louisiana to demolish the old Calcasieu River Bridge (Moss Bluff) and the old English Bayou Bridge on old La.U.S. 171 near Lake Charles. Gossett subcontracted the demolition of the old Calca-sieu River Bridge to Wilton Chavis. Under the disputed portion of the contract, Chavis was to receive $14,000 for the demolishing work. There was also a $60 rental fee for a truck and driver involved. The parties stipulated during trial that the amount in dispute was $8,060. The contract provided that Gossett and Mr. Chavis would each receive 50% of the salvaged wood. It also provided that Gossett could cancel the contract at any time. The portion of the contract most pertinent to this dispute provides that:
“4. All wood must be removed in such a way that it remains in good condition, capable of being sold. Sub-Contractor must take reasonable precautions to dismantle and remove all wood without splitting, damaging or otherwise rendering it unfit for further use.”
Gossett at no time attempted to cancel the contract and the bridge was totally demolished to the satisfaction of the state. However, after paying Mr. Chavis $6,000, it refused to pay the balance of the contract price on the ground that he had negligently destroyed at least half of the boards, thus costing Gossett its profit margin on the job. Mr. Chavis filed suit against Gossett and its insurer, Highland Insurance Company, for the balance due; Gossett reconvened alleging that Chavis’s negligent demolition cost it $10,000 in timber sales and praying for a judgment of $1,940. The trial court dismissed Gossett’s reconventional demand and awarded judgment in favor of Mr. Chavis for $8,060, plus interest and attorney’s fees.
On this appeal defendant-appellant urges that the trial court made two interrelated errors in finding that: (1) Mr. Chavis complied with the terms of the contract, and (2) Mr. Chavis took reasonable precautions to dismantle and remove all wood from the bridge in question. We affirm.
*576 The trial judge found that the two sentences quoted above were ambiguous and, relying on Giamanco v. Fairbanks, 218 So. 2d 346 (La.App. 3rd Cir., 1969), allowed the introduction of parol evidence to show the intent of the parties. See also, Delcambre v. Dubois, 236 So.2d 249 (La.App. 3rd Cir., 1970). After weighing this evidence, the trial judge concluded that the obligation of the plaintiff was to take reasonable precautions in dismantling operations in order to avoid losses of lumber. He based his conclusion upon the evidence submitted, LSA-C.C. Art. 1957, and Borne v. Magnolia School, 260 So.2d 793 (La.App. 4th Cir., 1972).
We reach the same conclusion. The following rules of interpretation are also applicable to this dispute. When there is doubt as to the true meaning of the words of a contract, they may be explained by referring to other words or phrases used in the same contract. R.C.C. Art. 1948. In such a case, it is the duty of the courts to ascertain the common intention of the parties rather than to adhere to the literal sense of the terms. R.C.C. Art. 1950. Every clause in an agreement is to be interpreted one by the other giving to each the sense that results from the entire act. R. C.C. Art. 1955. Mr. Rudy, President of Gossett, testified that normal breakage on a demolishing job is 10%. The plaintiff, Mr. Chavis, testified that at the time of the making of the contract, he told Mr. Rudy that he would be lucky to. save 40% of the lumber. This was corroborated by Mr. Lavergne and Mr. Collins, both of whom were present at the time of the making of the contract. Mr. Rudy did not dispute this assertion. Thus, under feasible demolishing methods there would be some breakage. Realizing this and reading each sentence in light of the other, we must conclude that Mr. Chavis was to salvage without damage as much wood as possible through the use of reasonable demolishing methods.
The issue is therefore one of fact. Did the trial judge commit manifest error in finding that Mr. Chavis used reasonable methods in dismantling the bridge?
The plans and specifications' of the bridge show that there were 446,342 board feet of creosoted lumber in the bridge. Gossett contends that it should have received 223,000 board feet and that it only received 120,000 board feet, or approximately 54% of its share of the salvagable lumber. Both Chavis and Rudy testified that they agreed to split the salvaged timber by the number of sections in the bridge with Mr. Chavis to receive the wood in the extra section. Chavis testified that some of the boards had as many as 50 nails in them. The decking was fastened with 60 penny nails and the bridge was in bad condition. In fact, he testified that he was almost killed when he fell through the decking in one place. Chavis testified that he would place his winch truck on one side of the bridge, attach three or four boards to the line, pull that side up, then move the truck and repeat the procedure on the other side of the bridge. The testimony of Mr. Leony, Gossett’s superintendent, contradicted that of Mr. Chavis. He testified that Chavis would attach his line to one end of three or four boards then drive forward, thus breaking some of the boards.
Mr. Bolt, a demolishing expert from Houston, Texas, was called by the defendant. He stated that a “cherry picker” might do a better job of removing the boards from the bridge without damaging them. He objected to the use of a winch truck because it is more dangerous to men working around it. He stated, however, that many demolishers use winch trucks in their business. Mr. Chavis testified, however, that if he were to use a “cherry picker”, he would have had to dismantle the bridge one board at a time and this would have broken every board. Bolt testified that the best practice would have been to use a tool designed by himself. However, this tool was not available to the public. Mr. Leony, on the other hand, suggested that a backhoe would have been a better instrument.
*577 The trial court weighed this conflicting testimony and found that since Mr. Chavis’s method of operation was an accepted method within the practice of the demolishing business, he had performed his obligation under the contract. The trial judge’s findings of fact are entitled to great weight and will not be reversed unless it is shown that the findings are manifestly erroneous. State of Louisiana, through Department of Highways v. Velma Richard Moity and Sterling Sugars, Inc., 276 So.2d 770 (La.App. 3rd Cir., 1973). There is no manifest error in the judgment of the court below.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant-appellant, Gossett Demolishing Company, Inc., and Highland Insurance Company.
Affirmed.