191 So.2d 183 (1966)
Anthony Joseph CAPIZZO et al., Plaintiff and Appellant,
v.
TRADERS AND GENERAL INSURANCE COMPANY et al., Defendants and Appellees.
No. 1822.
Court of Appeal of Louisiana, Third Circuit.
October 20, 1966.
*184 Domengeaux & Wright, by D. Mark Bienvenu, Lafayette, for plaintiff-appellant.
McBride & Brewster, by Norman Foret, Lafayette, for defendant-appellee.
Before CULPEPPER, TATE and HOOD, JJ.
HOOD, Judge.
Plaintiff, individually and on behalf of his minor son, sues for damages for personal injuries sustained by his son as a result of an automobile accident. Prior to trial, plaintiff settled with all of the defendants except State Farm Mutual Automobile Insurance Company, and the suit was dismissed as to those defendants. After trial, judgment was rendered by the trial court in favor of State Farm, dismissing the suit as to that remaining defendant. Plaintiff has appealed.
On July 10, 1964, while plaintiff's son was riding as a passenger in an automobile being driven by Carroll Stutes, the driver lost control of the car and it collided with a utility pole, causing young Capizzo to sustain serious bodily injuries. Carroll Stutes, the driver of the car, was a minor and he was living at the home of his father, Thomas Stutes, when this accident occurred.
Thomas Stutes was the named insured in a family automobile policy which had been issued previously by defendant, State Farm, and which policy was in effect at the time of the accident. The defendant concedes that young Stutes was included as an "insured" under the bodily injury liability coverage provided by that policy.
Plaintiff contends that the policy which was in effect at that time provides that the limit of State Farm's liability for bodily injury is $10,000 for each person, while defendant contends that the limit of its liability under that coverage is $5,000 for each person. State Farm concedes that it is liable to plaintiff for the maximum amount due by it under the policy, and it has paid plaintiff the sum of $5,000, contending that that is the extent of its liability.
*185 The sole issue presented here, therefore, relates to the limit of liability of State Farm for bodily injury to one person. The trial judge concluded that its limit of liability was only $5,000 for bodily injury to one person, and since defendant has paid that amount to plaintiff judgment was rendered dismissing plaintiff's suit.
The record shows that on July 22, 1963, Thomas Stutes submitted to State Farm a formal application for a family automobile insurance policy providing bodily injury liability coverage, with limits of liability of $5,000 for each person and $10,000 for each occurrence. Pursuant to that application, State Farm issued to Stutes on that date a family automobile policy, bearing No. 441 697-D04-18, which provided bodily injury liability coverage with limits of liability of $5,000 for each person and $10,000 for each occurrence. The term of this policy was from July 22 to October 4, 1963, and it provided for a semi-annual premium of $67.90. A copy of that policy was duly filed with the Casualty and Surety Division of the Louisiana Insurance Rating Commission.
On or about October 4, 1963, Mr. Stutes paid a semi-annual premium of $67.90 on the same policy, and a receipt was issued for that payment. A copy of that receipt was filed with the Louisiana Insurance Rating Commission, the receipt showing that the premium was paid on a policy bearing the same number and affecting the same automobile as is shown on the original policy issued on July 22, 1963. According to the procedure customarily employed by State Farm and approved by the Insurance Rating Commission, the payment of the semi-annual premium and the issuing of such a receipt, had the effect of continuing the same policy in effect for an additional period of six months, from October 4, 1963 to April 4, 1964.
On or about April 4, 1964, Mr. Stutes paid another semi-annual premium on the same policy, bearing the same number and covering the same car, and a receipt was issued for that payment, a copy of which receipt was also filed with the Louisiana Insurance Rating Commission. The payment of this premium and the issuance of that receipt had the effect of continuing the policy for the period from April 4 to October 4, 1964. The accident which gave rise to this suit occurred during that six-months period. That receipt, however, shows that effective with that payment the class of the policy was changed from Class 11 to Class 21, and that the premium was increased from $67.90 to the sum of $92.60.
State Farm, in line with its customary procedures, did not issue a new insurance policy to Mr. Stutes when he paid either of the last two semi-annual premiums. At the time the accident occurred, therefore, the only documents which were in existence and which tended to show the coverage which had been provided to Stutes were: (1) The application which Stutes submitted to State Farm on July 22, 1963, for a $5,000/$10,000 bodily injury liability policy; (2) the policy which was issued by State Farm on July 22, 1963, providing limits of liability in accordance with the above mentioned application; (3) a copy of that policy which was filed with the Insurance Rating Commission shortly after it was issued, showing limits of liability as stated in the application; (4) the receipt issued on or about October 4, 1963, for payment of a semi-annual premium on the above mentioned policy; and (5) the receipt issued on or about April 4, 1964, for payment of another semi-annual premium on said policy.
As we have already pointed out, the only policy which had been issued by State Farm prior to the date of the accident clearly provided that the insurer's limit of liability for bodily injury to one person was $5,000. There is nothing in either of the two receipts, or in any of the other documents which were in existence at the time of the accident, which tend to show that Stutes had ever requested an increase in coverage for bodily injury liability, or that any such increase had ever been put into effect.
About two weeks after this accident occurred, the wife of Thomas Stutes telephoned *186 a representative of State Farm and requested that a duplicate copy of the policy which provided coverage for her husband at the time of the accident be mailed to him. In response to that request, State Farm mailed to Stutes what purported to be a copy of Policy No. 441 697-D04-18, being the number of the policy which was originally issued on July 22, 1963. This copy, however, showed that the policy covered the period from April 4 to October 4, 1964 (the period during which the accident occurred), that the limits of State Farm's liability for bodily injury was $10,000 for each person and $20,000 for each occurrence, and that the total premium for such policy was $92.60. The copy of the policy furnished to Stutes at that time also shows on its face that it was issued on August 7, 1964, which was four weeks after the accident occurred. Plaintiff relies on the copy of the policy which was sent to the insured after the accident as proof of its claim that State Farm's limit of bodily injury liability was $10,000, instead of $5,000 as provided in the original policy.
Mr. Henry Carter, service superintendent of State Farm, testified that the policy which was issued on July 22, 1963, was issued pursuant to the application filed by Stutes, that it provided limits of liability of $5,000 and $10,000, as shown in the application, and that since that time there has never been any increase in the limits of liability or in the insurance coverage of Stutes. He explained that on April 4, 1964, the policy was changed from a Class 1-A to a Class 2-A policy (that being the same as a change from Class 11 to Class 21, as shown on the receipt), because plaintiff's minor son became eligible to drive the insured vehicle at or about that time, and with this change in class there was an increase in the premium rate. He stated that the premiums charged by his company on insurance policies comply with the regulations of the Louisiana Insurance Rating Commission, and that copies of all policies, endorsements and renewal receipts which are issued by State Farm are filed with the Rating Commission.
Mr. Carter further testified that on July 23, 1964, which was about two weeks after the accident occurred, State Farm was requested to send a duplicate policy to the insured, but that in making this duplicate "the typist has made an error in typing the limits." He stated that the only policy which was in existence at the time of the accident or on the day the request for a duplicate was made was the one which had been issued originally on July 22, 1963, but that it was the custom of his company when issuing a duplicate of a policy which has been renewed to have the copy show the current six-month term, or the current effective dates of the policy, even though the original policy showed a different term.
Mr. W. A. Henderson, supervisor in the Louisiana Casualty and Surety Rating Commission, testified that his office receives copies of all policies, renewals, endorsements and cancellations which are issued by insurance companies, that he has a complete record of the policies issued to Thomas Stutes by State Farm, and that according to the records of his office the limits of State Farm's liability for bodily injury at the time of the accident was $5,000 for each person and $10,000 for each occurrence. He stated that there had never been any change or increase in these limits of liability, and that he would have received an endorsement if there had been a change. He further testified that the change in classification of the policy from 1-A to 2-A, and the increase in the premium rate, were audited by his office and were approved as the correct premium charge for a continuation of the same coverage.
The evidence convinces us, as it did the trial judge, that the insurance contract which was in existence at the time of the accident provided that the limit of the liability of State Farm for claims of bodily injury was $5,000 for each person, and that an error was made by State Farm in preparing the duplicate policy which was sent to the insured after the accident.
*187 At the trial plaintiff objected to all of the parol evidence which defendant offered on the ground that it tended to contradict or vary the terms of the duplicate insurance policy which was issued on August 7, 1964. That objection was overruled and the parol evidence was admitted. Plaintiff contends that the trial judge erred in admitting and considering the parol evidence, that such evidence should be excluded and that he should be permitted to recover the amount claimed under the clear and unambiguous provisions of the duplicate policy. Defendant, on the other hand, contends that the parol evidence was not offered to contradict or vary the August 7, 1964, contract, but instead its purpose was to show what insurance policies were in existence at the time of the accident.
The general rule is that when the provisions of a written contract are clear and unambiguous, the contract cannot be varied, explained or contradicted by parol evidence, and the meaning or intent of the contracting parties must be sought within the four corners of the instrument. One of the exceptions to this general rule is that when the terms of a written contract are susceptible of more than one interpretation, or where there is uncertainty or ambiguity as to the provisions of the contract, or where the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguities and to show the intentions of the parties. LSA-C.C. art. 2276; Gulf States Finance Corp. v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36; Snow-White Roofs, Inc. v. Boucher, 182 So.2d 846 (La.App.4th Cir. 1966); Marcann Outdoor, Inc. v. Hargrove, 140 So.2d 815 (La.App.3d Cir. 1962).
We agree with defendant that the principal purpose for offering the parol evidence was to show that the only insurance contract which was in effect, or even in existence, at the time the accident occurred was the original policy which was issued on July 22, 1963, and that the duplicate policy relied on by plaintiff was not issued until after the accident occurred. In our opinion the parol evidence was admissible for that purpose.
Plaintiff correctly points out that the liability of the insurer, State Farm, became absolute at the time the injury or damage covered by the liability policy occurred. The accident involved here occurred on July 10, 1964, and the liability of State Farm thus became absolute or fixed as of that date. The documentary evidence alone indicates strongly that the earlier policy, issued in 1963 and renewed from time to time thereafter, was the only one which was in force and effect at the time of the accident. One important factor which leads to that conclusion is that the duplicate policy shows on its face that it was not issued until after the date of the accident. When the documentary proof is considered with the testimony of the witnesses, we think the evidence clearly preponderates to the effect that the original policy, issued on July 22, 1963, and continued in effect for a period including the date of the accident, was the only insurance contract which had been entered into prior to the time this cause of action arose and it was the only insurance policy which was in existence at that time.
We think the parol evidence offered by defendant also was admissible on another ground, and that is to explain or remove an ambiguity in the various documents which were introduced in evidence. On the one hand, the five written documents upon which defendant relies, including the original insurance policy which was issued in 1963 and premium receipts showing that that policy was continued in effect, indicate that the insurer's limit of liability for bodily injury was $5,000 for one person. On the other hand, the duplicate policy upon which plaintiff relies, which duplicate was issued on August 7, 1964, and bears the same number as the original policy offered by defendant, indicates that the insurer's limit of liability for bodily injury was $10,000 for one person. These two policies cannot be reconciled by an examination of *188 the documents themselves, and some question as to the application of the duplicate policy is apparent on its face, since it was not issued until after the accident occurred. Under those circumstances we think the trial judge correctly admitted and considered all of the parol evidence, as well as the documents which were presented, to clarify the ambiguities or uncertainties which existed as to those policies, and to determine the true intent of the parties.
Our conclusion is that the limit of liability of State Farm in this instance is $5,000. Since it has paid that amount to plaintiff we think the trial court correctly dismissed plaintiff's suit for the additional amount claimed.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.