CHASEZ, Judge.
Lakeshore, Inc., plaintiff-appellant herein sued Dirán Sarafyan, defendant-appel-lee, to enforce the terms of a written lease allegedly existing between them. Defendant answered the suit by claiming the lease was no longer in force, but if it was effective that he had acquired a verbal authorization to modify the specific terms of the lease which plaintiff was attempting to enforce. The trial judge granted judgment in favor of defendant dismissing plaintiff’s suit, without written reasons, and plaintiff has taken this appeal.
By written agreement bearing the date August 20, 1965, Lakeshore, Inc. leased to the defendant apartments C/D, Park-chester Apartments, 4713 Duplessis St., New Orleans, for a term of twelve (12) months beginning October 1, 1965. The monthly rental rate was fixed at $160.50, payable in advance and due on the first day of each month. Under the provisions of paragraph 4 of this instrument, the lease automatically renewed itself each October 1st, unless written notice of termination was given by either party 30 days prior to that date. Paragraph 4 reads as follows:
“FOURTH. — If Lessee, or Lessor, desires that this lease terminate at the expiration of its term he must give to the other written notice at least 30 days prior to that date. Failure of either party to give this required notice will automatically renew this lease and all of the terms thereof. This provision is a continuing one and will apply at the expiration of the original term and at the expiration of each subsequent term.”
Paragraph 11 of the lease contained a stipulation whereby the lessee could terminate the lease prior to an anniversary date under certain circumstances. Paragraph 11 is as follows:
“ELEVENTH. — After six months from the effective date of this lease, in the event of a business transfer of Lessee to a new location more than 50 miles from the corporate limits of the City of New Orleans evidenced by a letter from Lessee’s employer making such transfer, this lease may be cancelled on thirty (30) days written notice, which notice shall be given on or before the 1st day of the month immediately preceding the date of cancellation.”
Prior to the signing of this lease at the insistence of the defendant lessee, a written amendment was inserted in the lease which allowed the lessee after June 1st, 1966, to pay just one-half month’s rent in the event of a transfer, thus modifying paragraph 11 quoted above. This written amendment reads:
“IF TENANT IS TRANSFERRED AFTER JUNE 1, 1966, THEN WITH 30 DAY NOTICE WILL PAY ONE HALF MONTH EITHER IN JUNE OR AUGUST, 1966.
/s/ MRS. L. GRIFFIN for CM”
On May 31, 1968 the defendant submitted written notification to the plaintiff of his intention to vacate the premises on June 30, 1968. His notification was written on a form supplied by plaintiff for that purpose. His stated reason for moving was that he had purchased a home. He then tendered a check to the plaintiff in the amount of $110.50, representing the monthly rental for June, 1968, less $50.00, damage deposit. This payment was refused by plaintiff. On June 13th defendant moved out of his apartment and on June 30th he returned his keys to the plaintiff’s office.
The plaintiff filed this suit on September 6, 1968 for breach of the written lease. In it plaintiff prayed for damages in the amount of $592.00, plus stipulated attorney’s fees of 25'%. The damages represent rent for the months of June, July, August and September, 1968, at the rate of $160.50 per month, less a credit of $50.00 for defendant’s damage deposit.
At the trial of this matter the defendant presented two defenses to the plaintiff’s suit. As his first, he introduced a written notice which had been sent to him by the *17 plaintiff on August 23, 1966. This notice reads in part as follows:
“Dear Tenant:
“This is to inform you that the time is at hand for you to come into the office to sign a new lease before the ‘first’ of the month. We need to know if you are planning to leave or stay on with us. We also would like to inform you that the late charges for the payment of the rent has been increased from $1.50 to $5.00.
“If there is anything we can do to make your stay with us more pleasant, do not hesitate to tell us. It is our hope that you plan -to continue your residence with us.
Yours truly,
Form 1 Parkchester Management”
He also introduced a letter sent to him by the plaintiff on September 2, 1966 which reads as follows:
“Dear Tenant:
“Enclosed you will find original and one copy of your lease which will become effective on the 1st of October 1966.
“Please sign the original and return in self-addressed envelope enclosed.
“You will notice that there is a change in the late charge from $1.50 to $5.00. We have been advised to have our new lease signed. There is no-change in your rent.
“If there is anything we can do to make your stay with us more pleasant, do not hesitate to tell us.
Yours truly,
Form # 1 A Parkchester Management”
Attached to this notice was an original and a copy of a lease agreement for a twelve month term beginning October 1, 1966. The original and the copy were both signed by the lessor. This new lease contained the same provisions as the old lease with the exception that the fee charged for late monthly rental payment was increased from $1.50 to $5.00. The defendant refused to sign this new lease, however, and kept both the original and copy in his possession. It is the defendant’s position that the old lease executed August 20, 1965 terminated on September 30, 1966 when he failed to sign the new lease submitted to him on September 2, 1966. He contends that his occupancy from October 1, 1966 on was strictly on a month-to-month basis, thus he was free to move from the premises at any time with a proper thirty day notice. He alleged in his petition that he made a verbal agreement with an agent of the plaintiff at the time of his refusal to sign the new lease in September, 1966 that he would be allowed to stay on after October 1, 1966 on a monthly basis, however he made no attempt at the trial of this matter to substantiate this allegation by his own testimony or other evidence.
In opposition to this position plaintiff relies on paragraph 4 of the lease of August 20, 1965. It contends that as the defendant admittedly gave no notice thirty days prior to the anniversary date of the lease, October 1, 1966, that he wished to terminate this lease, the lease automatically renewed itself on that date for another year, and subsequently renewed itself for the same reason on October 1, 1967.
In Richard Apartments, Inc. v. Shadix, La.App., 150 So.2d 602 we had occasion to comment on the validity of a similar self-renewing lease clause as follows:
“[1] Defendant’s contention with regard to the validity of the renewal clause is without merit. The validity of this type of renewal clause has been upheld by this court’s predecessor. * * *
‡ ‡ ‡ i{i *
“Under such a clause the mere inaction of the parties has the effect of tacitly renewing the lease for another term. * * * Defendant voluntarily signed the lease and its provisions are enforceable against her. * * * The clause is clear and free from all ambiguity.”
*18 Although the defendant does not seriously dispute the validity of this clause per se, he argues that the lessor itself, by the very terms of paragraph 4, terminated the lease when it submitted to the defendant on September 2, 1966 the new lease for his signature. Although the defendant does not specifically argue it, we must decide if the notices of August 23, 1966 and September 2, 1966 quoted above constituted written notice of the desire of the lessor to terminate the old lease as per paragaraph 4. We find we must answer this question in the negative.
The most that can be said of these notices is the lessor expressed in them the desire to have the lessee sign a new lease which would vary the terms of the old lease only to the extent of increasing the late fee charge; all the other provisions of the new lease were the same as those in the old one.
There is no expression in lessor’s notices that the lessor would consider the old lease terminated at the end of its term, or desired to terminate the old lease should the lessor fail to sign the new one. The lessor simply was not taking advantage of the' self-renewal clause in the old lease, however we do not find that he was thereby waiving his rights under that clause.
It should be noted that our interpretation of these notices does not work solely to the advantage of the lessor, for the lessee was able to continue to enjoy the rights and privileges under the old lease and could not have been forced by the lessor to leave the premises until the next anniversary date.
As we have found that the old lease dated August 20, 1965 was still in effect on June 13, 1968 when the defendant vacated the premises, we must now consider defendant’s second defense herein, that the terms of that lease were varied by verbal agreement between both parties.
Defendant testified at trial that before he signed the original lease dated August 20, 1965 he asked the agent for the lessor whether he would be allowed to move from the apartments, after the lease had been in effect for six months, in the event he purchased a home. He stated he was informed by this agent that this would be agreeable with the lessor. In support of his position the defendant introduced the testimony of Mrs. Lucille Griffin, the lessor’s agent, referred to by the defendant.
Mrs. Griffin testified that at the time the lease was confected she was assistant real estate agent for the plaintiff and she was still in the employ of the plaintiff at the time of the trial. Mrs. Griffin stated that in response to defendant’s inquiry before he signed the lease, Mrs. Griffin advised him that it was the policy of the plaintiff’s apartment manager to allow tenants to move from the apartments prior to the expiration of the lease in the event that they were moving to their newly purchased home, provided they had been living in the apartments for six months. Mrs. Griffin stated that she advised defendant that this move was construed by the lessor as a “business transfer” as per paragraph 11 of the lease.
Counsel for plaintiff objected strenuously to the admission of parol evidence to vary the terms of the written document, but it was admitted over his objections. He reurges these objections as part of his argument in this appeal.
The general rule concerning the admission of parol evidence to modify a written agreement is contained in LSA-C.C. art. 2276:
“Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
This rule, along with the parol evidence exception, was stated in Gulf States Finance Corp. v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36, 38 (1965) as follows:
“ * * * ‘While the rule universally obtaining where an instrument is required *19 by law to be in writing, or where the parties adopt that mode of contracting, is to the effect that parol evidence is not admissible to contradict, vary, or modify such instrument * * *. Many of the exceptions to the parol evidence rule are quite as well settled as the general rule and require only a mere statement. It may not be contended for example, that, as between the parties to an instrument parol evidence is incompetent to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties.’ ”
This same general rule and exception was stated in Capizzo v. Traders & General Insurance Company, 191 So.2d 183, 187 (La.App.3rd Cir. 1966) as follows:
“[2,3] The general rule is that when the provisions of a written contract are clear and unambiguous, the contract cannot be varied, explained or contradicted by parol evidence and the meaning or intent of the contracting parties must be sought within the four corners of the instrument. One of the exceptions to this general rule is that when the terms of a written contract are susceptible of more than one interpretation, or where there is uncertainty or ambiguity as to the provisions of the contract, or where the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguities and to show the intentions of the parties. LSA-C.C. art. 2276; Gulf States Finance Corp. v. Airline Auto Sales, Inc., 248 La. 591, 181 So. 2d 36; Snow-White Roofs, Inc. v. Boucher, 182 So.2d 846 (La.App. 4th Cir. 1966); Marcann Outdoor, Inc. v. Hargrove, 140 So.2d 815 (La.App. 3d Cir. 1962).”
In the present case the trial judge allowed the introduction of parol evidence to modify the written lease over the objection of Lakeshore, Inc.’s attorney. This court finds that the objection should have been sustained and the evidence not admitted.
The terms of Paragraph 11 of the lease are unquestionably clear and unambiguous. The only reason for which the lease can be cancelled prior to the expiration of its term is a business transfer to a new location more than 50 miles from the corporate limits of the City of New Orleans. Defendant was aware of this provision and spoke with the rental agent before he signed the lease seeking a modification of this paragraph that would allow him to give 30 days notice of intention to vacate if he bought a house and by this notice cancel his lease. He, therefore, understood the terms of the written lease, they were not subject to more than one interpretation and there was no uncertainty or ambiguity as to the provisions. He had insisted upon one written change of the lease terms and plaintiff had agreed and typed the change on the lease. Yet on this second desired alteration he states he had accepted a verbal assurance that he would be allowed to move without penalty although in violation of the written lease. Since defendant had negotiated a written modification of the lease on one point with plaintiff, he should have insisted that the cancellation modification be reduced to written form also. However as he failed to do so, he will not be allowed to insert the modification by parol evidence.
For the foregoing reasons the judgment of the trial court in favor, of defendant is reversed and judgment is now granted in favor of plaintiff, Lakeshore, Inc., against the defendant Dirán Sarafyan in the amount of $592.00 for rental payment due plus $148.00 as the 25:% additional in attorney’s fees, for a total judgment of $740.00, with legal interest from date of judicial demand until paid.
All court costs, both on the trial and appeal, are assessed against defendant as per the lease agreement.
Reversed and rendered.