293 So.2d 550 (1974)
ATLAS LUBRICANT CORPORATION
v.
FEDERAL INSURANCE CO. OF NEW JERSEY et al.
No. 5675.
Court of Appeal of Louisiana, Fourth Circuit.
March 27, 1974.
Rehearing Denied May 10, 1974.
*551 William D. Treeby, of Stone, Pigman, Walther, Wittimann & Hutchinson, New Orleans, La., for Atlas Lubricant Corp., plaintiff-appellant.
P. A. Bienvenu, Ernest L. O'Bannon of Bienvenu & Culver, New Orleans, La., for Federal Ins. Co. of New Jersey, Aetna Casualty & Surety Co. of Connecticut, Lafayette Ins. Co. of Louisiana, and Great American Ins. Co. of New York, defendant-appellees.
Before STOULIG, MARINO and MALIK, JJ., Pro Tem.
THOMAS J. MALIK, Judge Pro Tem.
This is an action brought by the Atlas Lubricant Corporation against the Federal Insurance Company of New Jersey, Aetna Casualty & Surety Company of Connecticut, Lafayette, Insurance Company of Louisiana, and Great American Insurance Company of New York on fire insurance policies. Atlas, Lubricant Corporation suffered a large fire on April 23, 1970 that destroyed plaintiff's oil blending, packaging and distributing plant at 200 First Street, Jefferson Parish, Louisiana. Numerous tanks used for oil storage at the facility are the subject of this litigation which were largely unaffected by the fire.
The plant property was insured by the defendant insurance companies with a total coverage of $210,000.00 in fire and extended coverage. The insurance was placed through George D. Tessier, Inc., agents for the insurance companies, which agent company acted through Mr. George D. Tessier, Sr. Mr. Rivet, president of Atlas Corporation, procured these insurance policies on behalf of the plaintiff from Mr. George D. Tessier, Sr., who prepared the property *552 coverage description of the policies. All of the policies included provisions of co-insurance providing that Atlas was required to insure its property up to 90% of value. Under this provision should Atlas fail to meet this requirement, Atlas would become an insurer to the extent of the deficit and in that event would bear its proportionate loss.
After the fire in question Atlas notified the insurers of the claim and subsequently submitted a detailed Proof-Of-Loss on April 22, 1971. This Proof-Of-Loss did not include certain designated "outside storage tanks" which plaintiff claims were not covered by the policies. The defendant insurers on the other hand claim that the "outside tanks" should have been covered by the various contracts of insurance. As a result they engaged Mr. Paul Merritt, an appraiser to value the tanks. The defendant then calculated the loss, based upon the value of all the property losses, $214,562.50, plus the value of the outside tanks as appraised by Mr. Merritt, $118,834.81 the total value of reinsured property, therefore, was determined by the defendants to be $333,397.31 ($214,562.50 plus $118,834.81). Since plaintiff had only $210,000.00 of insurance in force, the coinsurance would apply under defendants calculations and policy interpretation.
The trial court ruled in favor of the defendants and plaintiff, Atlas Lubricant Company, hereinafter referred to as Atlas has appealed.
The very basic issue to be decided is whether or not these "outside" storage tanks are covered by the policies or not. If they are not covered the coinsurance clause would not apply and the defendant insurers would owe Atlas for the full amount of the loss. The trial judge in the lower court found that the policies were clear and unambigious and the tanks in question were insured thereunder.
The several questions posed to this court by the appeal are: (1). Whether these outside storage tanks are covered by the policy and (2). If they are, what their value is. Resolutions of the first issue in favor of the plaintiff precludes the necessity of going into the second issue. We think the lower court erred in holding that the tanks in question were included in the policy. A contract for insurance clearly expressed between the parties, is required under the law, and a strained construction on interpretation should not be used to effect coverage where the policy itself clearly evidences a contrary intent (Graham v. Maryland Co., 230 So.2d 264, La.App. 1st Cir. 1969). Further, contracts of insurance, like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear, then these terms are to be taken and understood in their plain and ordinary sense, (Ranch v. American National Ins. Co., Orleans No. 8881 (La.App.1923). Courts cannot, under the guise of interpretation, make a new contract for the parties as in Montelene v. American Employers Insurance Company, 239 La. 733, 120 So.2d 70 (1960); Hemel v. State Farm Mutual Automobile Ins. Co., 211 La. 95, 29 So.2d 483 (1947); Edwards v. Life Casualty Ins. Company of Tennessee, 210 La. 1024, 29 So.2d 50 (1946).
This court is fully aware that it cannot create ambiguity, where none exists in order to protect the interests of the insured. The problem thus is whether there is such ambiguity. If so, the insurance coverage descriptions must be interpreted to determine its effect on the rights of the parties, and parol evidence would be admissible to interpret the insurance coverage description if such ambiguity was indeed present. 3 Corbin 542, 542A, 543, 579; Schuman v. Gordon Inc. Corp., 247 Md. 265, 232 A.2d 256 (1967); Whitebird v. Eagle-Picher Co., 390 F.2d 831 (10th Cir. 1968). The ambiguity if any must be found in the property coverage description of the policies, which reads:
"On the one-story, frame, approved roof warehouses, 1, 3, 5 and 7 pump house, *553 paint house, lunch house, boiler house, tanks & structures, and oils and machinery equipment and including furniture, fixtures, and equipment located 200 First Street, Jefferson Parish, Louisiana. Fire District 1 (Ward 7), Jefferson Parish, Louisiana (395).
Defendant argues that the language of the policy is clear and that tanks means tanks. How else can one say it? It means, unless otherwise limited, anything which is encompassed within the usual meaning of the word. Atlas does not contend that the 66 objects valued by Mr. Merritt are not "tanks". Atlas seeks to limit the application of the word to a few of such objects which it says are "inside" tanks as opposed to the larger and more valuable number of such objects which it chooses to call "outside" tanks. But the policy is not limited to "inside" tanks, or "outside" tanks, or to "tanks with coils", or to "silver colored tanks," or to any special kind of tanks. It covers them all, inside and out as shown by the policy.
Defendant is very clear in one point that is that there is no other way to say tanks other than "tanks." But in the argument defendant reveals two very basic facts relevant to the question of ambiguity. First of all defendant enables a distinction between the alleged two types of tanks by referring to the "larger and more valuable number of such objects" which it chooses to call "outside tanks." So apparently there is a difference between the two types of tanks, if not only of location, but of value and size, which is recognized by the defendant, which brings us to the second relevant fact brought out in the argument. That is, that there is a clear way of designating the tanks and structures to be covered by a policy. Such tanks could easily be referred to as "upright" tanks, or as "welded" tanks, or as "tanks with coils," or as "silvered colored tanks", or as "inside or outside" tanks, however, no such description was made in the policy.
In dealing with the first fact it is perfectly clear that there are indeed two types of tanks. Mr. Rivet in his testimony clearly brings out this point:
"Q. Did you consider anything unusual about the words "tanks and structures" at that time in the policy?
A. No, because we had inside storage tanks in warehouse number five and those are included in the property that was to be insured, and further,
Q. Did you inform Mr. Mauterer or the agents at that time of the existance of the inside storage tanks?
A. Yes, I did. I also explained that those tanks were referred to in the policies, the inside tanks. And that is why they had some words as "tanks and structures". I further explained that some of the inside tanks were built upon little platforms, and that was what was meant by the structures, the platforms which supported the inside tanks."
Out of this evidence two things are clear, First that there are indeed two different types of tanks, those inside the building and those "larger and more valuable" outside the building. Secondly that the tanks in the policy are described as "tanks and structures" which Mr. Rivet stated referred to platforms which supported the inside tanks. Thus on the very face of the policy we find ambiguity. Truly tanks means tanks, but which tanks, the inside, the outside or all the tanks? Furthermore why did the descriptions refer to "tanks and structures" rather than just "tanks"?
In the instant matter we think that there is enough ambiguity in the contract to permit the introduction of parol evidence to explain the intent of the parties. When the terms of a written contract are susceptible of more than one interpretation, or when there is uncertainty or ambiguity as to be provisions of the contract, parol evidence is admissible to clarify the ambiguities and to show the intentions of the parties. LSA-C.C. Art. 2276; Capizzo v. Traders and General Insurance Company, *554 191 So.2d 183 (La.App. 3d Cir. 1966); Giamanco v. Fairbanks, 218 So.2d 346 (La.App. 3d Cir. 1969). Snow-White Roofs, Inc. v. Boucher, 182 So.2d 846 (La. App.1966). Furthermore where the terms of a written contract are susceptible of more than one interpretation or where there is uncertainty or ambiguity as to the provisions of the contract, or where the intent of the parties cannot be ascertained from the language employed, parol evidence may be introduced to show their intent. Marcann Outdoor, Inc. v. Hargrove (Abrusley), 140 So.2d 815 (La.App.1962).
Consideration of the parol evidence admissible under the above stated rules reveals Mr. Rivet's uncontradicted testimony:
"Q. Did Atlas Lubricant Corporation to your knowledge intend to insure the outside storage tanks those five policies designated defendant 1 through 5?
Mr. O'Bannon:
We object to that.
The Court:
Overruled. I say it goes to the weight of the evidence as opposed to the admissability.
The Witness:
It was not my intention that those outside storage tanks be insured.
Q. Why not?
A. Because I had discussed the complete insurance program with Mr. George Tessier. We had evaluated what property was owned by Atlas Lubricant Corporation, what coverage we should have. And it was concluded that the exposure did not justify the cost of the premiums of insuring the outside storage tanks. So, they are not included in the policies, the outside tanks were not included in the policies that I placed with George Tessier."
Besides this clear expression of intent, plaintiff alleges that the tanks in question were not as susceptible to fire damage as the items within the building, since the tanks were filled with non-flammable lubricating oil. The fact that they were not damaged in the fire supports Rivets version of his intentions at the time the policy was written. This coupled with the allegedly minor cost, nature and use of the tanks serve to further enlarge the ambiguity of the property coverage description. Furthermore the plaintiff asserts that the description of the insured items, by reference to the municipal number of a building containing them, "200 First Street", limits coverage to only the items within that particular building. In the holding that policies of insurance did not cover items in adjacent buildings which were operated as part of the insured's establishment, the Court in Charles H. Hebert Co. v. Aetna Casualty & Surety Co., 148 So.2d 129 (La. App.1962), relied upon the intention of the parties. The intent of the parties was evidenced by parol testimony of witnesses. In that case, difference was given to the intent of the insured at the time of entering into the contract.
All considered two facts emerge first, there was ambiguity in the property coverage description and, the intention the insured and the insurer at the time of making the contract is indeed a proper subject of discussion.
As to the former, the courts in Louisiana as well as in a majority of our sister states are in accord. Ambiguous provisions of an insurance policy will be construed most strongly against the insurer. Hartford Fire Ins. v. Roger Wilson, Inc., 252 So.2d 161 (La.App.1971), writs denied 259 La. 939, 942, 253 So.2d 381. Ambiguities must be construed against the writer of the contract. Walker v. Louisiana Hospital Service, Inc., 224 So.2d 494 (La.App. 1969). The underlying reasons for this rule is clear. Primarily it exists because as in the case at bar most insurance contracts are drafted by the insurer and not the insured. If the drafting was done solely by one side, then, the presumption *555 in interpreting a doubtful provision is against that party. Is it not provable that the draftsman took great care in specifying the rights and duties of his party and less care in stating those of the other party? See Patterson, Edward, the Interpretation, 64 Col.L.R. 857 (1964), and construction of contracts. In the case at bar Mr. Rivet relied on the experience and trust of Mr. George Tessier:
"Q. Did you discuss the description of these policies with Mr. George Tessier after you received the policies?"
"A. No, I don't recall that we discussed the description. He was my insurance agent and I assumed that he had worded the policies properly." This Court cannot sacrifice substances to form or follow words other than ideas. The intention of the parties namely the agent George D. Tessier, Sr. (now deceased) and Maurice J. Rivet of Atlas, was to exclude the outside tanks from coverage. Although Mr. Rivet states that Tessier was his agent, the law decrees to the contrary, namely, Tessier is the agent of the defendants and they are bound by his intentions.
Secondly, the insurer is not totally without remedy. An agent must exercise reasonable care and intelligence in transacting the business of an insurance company. If through his acts, he binds the insurance company to a risk that he had no authority to assume for it, the agent may become liable to the insurance company for the amount of insurance that it was required to pay out and the expenses incurred by the insurance company because of the loss. See Redenbaught, Liability Consideration Concerning Insurance Agents and Brokers, 22 Drake L.R. 749 (1973). Without deciding the negligence of the agent (Mr. George Tessier), it cannot be disputed that the brief five line policy coverage description drafted by Mr. Tessier for the entire complex oil blending, packaging and distributing plant of Atlas Lubricant Corp. for a $210,000.00 insurance policy is at best brief and inadequate. Insurance agents are fully aware that the law will resolve ambiguities against the insurer and thus they should strive to draft policies that are clear, specific and unambiguous so as to protect the interests of the insurer and to prevent the possibilities of costly litigation.
The intent of the parties must also be given effect in construing the language of the property coverage description. "An insurance policy is a contract between the insurer and the insured and the courts are bound to give legal effect to it according to the intent of the parties, the intent to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. The very best evidence that this court has on the intention of the parties at the time of the making of the contract is the unimpeached and uncontradicted testimony of Mr. Rivet. His testimony clearly states that it was his intention to insure only the inside tanks, that Mr. Tessier was not able to testify because of his death is unfortunate, does not serve to discredit or impeach this rather important testimony of the sole surviving party to the contract. There was error in the lower court in disregarding this testimony. We realize that questions which relate to property covered in fire policies must of course be strictly adhered to so as to protect the insurer from fraud on imposition, however, it is also basic law that the policy should be construed according to the evident intent of the parties, to be derived from the words used, the subject matters to which they relate and matters naturally and usually incident thereto.
Insofar as quantum, it seems clear that the loss for which plaintiff has not been reimbursed, is within the unpaid balance of the coverage, which is the amount prayed for by Atlas. The trial Courts ruling implements the expert testimony of Paul Merritt who testified on behalf of the defendants, but ignored the fact that that portion of the loss voluntarily paid, was in fact paid on the basis of estimate submitted *556 by Atlas. It seems incongruous to accept an appraisal on tanks which were undamaged, passing the value on present day estimate. This would be the proper approach only if the tanks were being rebuilt, but not for value purposes in the instant case when in fact the tanks were constructed over the past 30 years at a cost far below present day market value. This court agrees with the appellant that the position taken by the defendents expert has for its foundation a shaky premise being established at the price of steel to be used in the construction of new tanks. These insurance companies would never pay a loss (if replacement of the tanks were necessary) basing the estimate on a value secured from one phone call, as opposed for example to a competitive bid on values of present day market value of steel. Such a bid would be proper only if the tanks were being rebuilt, however, these tanks are not damaged and if the parties had intended a value on present day values, then the insured should have been given an opportunity to show depreciation on such As mentioned earlier the trial court accepted without question the values placed on the damage as set out by the plaintiff's proof-of-loss, thus we see no reason to disagree on these values in the light of our eventual judgment.
Both parties have "hammared away" at the co-insurance clause of the policy and its application in light of Louisiana's Valued Policy Laws (R.S. 22:695).
Valued policy laws or so-called total losses statutes dealing with Fire Ins. policies were enacted by many states in the late 1800's and early 1900's principally as a protective measure for insureds. In general, these valued policy laws require that in case of total loss to an insured's property from certain specified perils, the amount stated in the policy declarations is considered the value of the structure at the time of loss and is payable in full. In other words, if the value of property is less than the amount of insurance on a policy covering a building in a state having such a law, the insurer is precluded in most states from arguing that a lesser sum be paid, i. e., actual cash value. Additionally, any policy provision found to be inconsistent with the valued policy is considered void in most states.
With respect to the lower courts application of R.S. 22:695 or valued policy however, we feel that application to the instant case is inappropriate. The legislative intent of these laws was to prevent over-insurance and other abuses, that is, to keep insurers and their representatives from writing insurance on property for more than it is actually worth.
A second reason for valued policy laws is to encourage insurers and producers to inspect risks and assist prospective insureds in determining insurable value of properties. (F.C. & S. Bulletin, Oct. 1971). In the instant case there is no evidence that any inspection was ever undertaken by any of the 4 defendant insurers. It follows that failure of an insurer to inspect a risk for valuation purposes can lead to over-insurance and can produce a moral hazard as well. In other words, if a building is insured for more than its actual worth, an insured might be indifferent about loss prevention. This situation might even give an insured an incentive to intentionally cause damage to his structure. Without any question, there exists possibility here.
During oral arguments this court listened for some reference to a safety inspection by the defendants and not hearing any, turned to the voluminous record in this matter which is void of any reference to such an inspection. Such an inspection would not only have provided a safety service, but more importantly would have served to spell out the exact description of the hazards. We think this is an additional failure by the defendants to adequately provide for an unambiguous contract of insurance. There being no evidence of over-insurance, therefore follows *557 that the provisions R.S. 22:695 do not apply in this case.
In conclusion this court finds that the loss suffered by the appellant is within the coverage provided for, and the intention of the parties, namely the insurance agent George D. Tessier, and Maurice J. Rivet of Atlas, was to exclude the outside tanks from coverage. Therefore, the judgment of the District Court is reversed and judgment is herein rendered in favor of Atlas Lubricant Corporation in the full sum and amount of Thirty Three Thousand, Six Hundred Eighty-Six Dollars and Seventy-Two Cents ($33,686.72), plus interest from date of demand and all cost of this appeal.
Reversed.
STOULIG, J., concurs with written reasons.
STOULIG, Judge (concurring).
I respectfully concur.
Plaintiff valued at $214,562.50 the fire loss of property on which it had aggregate insurance coverage of $210,000. The contract of insurance required plaintiff to insure its property to 90 percent of value, failing which it would become a coinsurer to the extent of such deficit and shall bear a correspondingly proportionate share of any loss.
Plaintiff's operation involved the use of inside tanks located on platforms and outside tanks on concrete foundations. The dispute arises over the interpretation and construction of the property described in the policies as "tanks & structures" or "tanks and structures." Since both the inside and outside tanks are on structures, either frame or concrete, I believe this coverage description is ambiguous and that the parol evidence admissible under the jurisprudential exception to LSA-C.C. art. 2276[1] to clarify this item establishes beyond question that it was the intention of the parties to insure the inside tanks only. Therefore, having factually determined that the outside tanks were not insured under these policies, clearly the defendants have no basis for invoking the coinsurance formula to reduce the amount of plaintiff's recovery, since the property was insured in excess of 90 percent of value. Accordingly, the plaintiff is entitled to the sum of $33,686.72 improperly withheld by the defendants under the coinsurance provision of the policies.
NOTES
[1] See Capizzo v. Traders and General Insurance Company, 191 So.2d 183 (La.App. 3d Cir. 1966), and the cases cited therein.